[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12350
Non-Argument Calendar

_____

D. C. Docket No. 03-00202-CV-OC-10-GRJ

ERNEST CLARK,

Plaintiff-Appellant,

versus

ARGUTTO, Correctional Officer at the Federal
Correctional Complex in Coleman,
et al.,

Defendants,

ANDERSON, former Lieutenant at Federal
Correctional Complex in Coleman,
WARD, Correctional Officer at the Federal
Correctional Complex in Coleman,
JOHNSON, Associate Warden at the Federal
Correctional Complex in Coleman,
JENKINS, Captain at the Federal
Correctional Complex in Coleman,
LYNGAAS, Special Criminal Investigations Agent
at the Federal Correctional Complex in Coleman,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(March 13, 2007)**

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Federal inmate Ernest Franklin Clark, proceeding <u>pro se</u>, appeals the district

court's orders granting summary judgment in favor of the defendants on all of his

claims filed pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau</u>

<u>of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971). Clark also appeals the district

court's orders denying two motions to amend his complaint and his motion for

default judgment. After review, we affirm in part and reverse in part.

## I.  BACKGROUND

The gravamen of Clark's <u>Bivens</u> complaint revolves around a May 1, 2002

incident while Clark was housed at Coleman Federal Correctional Facility

("Coleman"). Among other things, Clark's <u>Bivens</u> complaint alleges that, because

Clark is a prison litigator, prison guards tortured him by repeatedly tightening hand

restraints, injuring his left wrist, and then kicking him to the floor.[1]

---

[1]We do not discuss the facts relating to Clark's other claims, which we conclude herein
were properly disposed of by the district court. Furthermore, the facts we discuss are taken from

According to Clark, during a "controlled move" at Coleman, Clark attempted to enter the prison library. As Clark passed through the metal detector, the machine's alarm was triggered, falsely indicating that he was carrying metal. After Clark tried two more times to pass through the metal detector without success, Clark turned to the guard, Brian Argutto, and asked that he be pat-searched. When Argutto refused, Clark explained that he needed to go to the library to use the typewriters to meet a litigation deadline. Argutto responded with profanity and also stated, "The Bureau is tired of punks like you and your ... damn law suits. You're not going to the Law Library today, Litigator. Get yor [sic] ass against the wall!" Clark complied.

While Clark stood against the wall, Argutto told Clark that if he continued to file grievances and lawsuits, the Coleman staff would "make [his] life a living hell!" Clark requested to speak with a Lieutenant. Argutto shouted angrily, "Shut yor [sic] . . . mouth, Ligitator. The Lieutenant doesn't speak to shit like you!"

Afraid that Argutto would become physically violent, Clark attempted to leave to go to the Lieutenant's Office to speak with the Operations Lieutenant. Argutto and another guard, Mark Anderson, instructed Clark to submit to hand

Clark's sworn declaration submitted in support of summary judgment and from portions of the record that are not in dispute. At the summary judgment stage, we must construe the facts in favor of Clark. However, we note that the defendants vigorously dispute most of Clark's version of events.

3

restraints. Clark told Argutto and Anderson that being put in hand restraints during a controlled move, while hundreds of inmates were present in the compound, posed an unnecessary threat to his physical safety and that he would agree to put the hand restraints on once the other inmates had been evacuated or Clark had been taken to a secure area.

Anderson ultimately placed the hand restraints on Clark's wrists "unbearably tight," and told Clark, "Once th[e]se babies work their magic, those hands won't be much good for writting [sic] law suits anymore!" Argutto then added, "Don't you just love how those cuffs feel, Litigator!"

Once Clark was handcuffed, guards Brian Ward, Mariano Perez and " a number of unknown named defendants" converged on the area. Clark told Perez that he was in a great deal of pain because the hand restraints were too tight. Perez told Clark to "shut . . . up!" Anderson, Perez and Ward, along with one of the unidentified guards, escorted Clark to the Lieutenant's Office and into the holding cell.

Once in the holding cell, Clark pleaded with his escorts to loosen the hand restraints. Anderson again told Clark to "shut . . . up" and told Clark to stand and face the wall. Clark complied, with Ward holding him by one arm and the unidentified guard by the other. While Clark stood facing the wall, guards Scott Lyngaas, Feliz Berrios, Vincent Soto and approximately ten unidentified guards

4

entered the holding cell.  Ward removed his hand from Clark's arm and placed it over the hand restraint on Clark's left wrist.  After standing facing the wall for approximately 15 minutes, Clark began to lose feeling in his left hand and wrist.  Clark told the guards that he could not feel his left hand and begged them to do something about the hand restraints.

At this point, Ward increased the force of his grip on the left restraint, squeezing the cuff tighter, causing a burning sensation to shoot from the left side of Clark's hand, along his left arm, to his shoulder.  Clark again begged the guards to loosen the hand restraints and again Ward applied more force to the left cuff.

According to Clark, for the next twenty minutes, each time Clark begged Ward to stop tightening the cuffs or told the guards that he could not feel his left hand, Ward would squeeze the cuff again and Anderson would state, "stop suing!"  While in the holding cell, the guards did not question Clark about the incident at the metal detector.  Furthermore, none of the other guards present in the holding cell intervened.  Instead, they "sadistically cheer[ed] and urg[ed] the defendant Ward on."

At one point, Dennis Johnson, an associate warden at Coleman, entered the holding cell and asked Anderson what Clark had done.  Anderson told Johnson that Clark "is a trouble maker that likes to sue, so we are teaching him a lesson!"  Clark told Johnson he had done nothing wrong and that the hand restraints were too tight

5

and Clark could not feel his hand. Johnson looked at Clark with contempt and left.

After Johnson left, Anderson told Ward to "kick his ass down!" Ward "very violently and very painfully," kicked Clark down to the floor. Because Clark's hands were restrained, he could not break his fall and his head struck the floor, causing Clark to become dazed and disoriented.

When Clark's head cleared, he had been carried from the holding cell by Anderson and Ward and was lying face down on the floor in the hallway leading to the Health Services and Special Housing Units. An education technician, Eugene Nabritt arrived and observed Clark. Clark begged Nabritt to loosen the hand restraints because Clark could not feel his hand. Nabritt did nothing in response. Anderson knelt down to Clark's face and said, "[D]on't worry about the pain, it'll soon go away because dead men do not feel pain. As soon as we get to the hole, I'm going to kill your ass!" Afraid that Anderson would carry out his threat, Clark told Anderson that he would never file another lawsuit as long as he lived and that he had learned his lesson. Anderson then ordered Ward and another unidentified guard to take Clark to "the hole."

Ward and the other guard took Clark to the Special Housing Unit ("SHU") and placed Clark in a receiving cell. At this point, one of the SHU staff loosened the cuff on Clark's left wrist and took Clark to be examined by the medical staff.

Prison medical records of the May 1 examination note superficial abrasions

6

on his right leg, left arm and chest, but do not mention a wrist injury. Clark, however, contends the medical staff ignored his requests that they examine his wrist. According to Clark, a red patch formed on the back of his left hand on the evening of May 1 and, by May 2, his left wrist was swollen and numb and even a slight touch to his left wrist produced a tingling sensation from the left side of his hand up to his left shoulder.

Prison medical records first note Clark's wrist injury on May 13, when an examining doctor explained to Clark that his wrist nerve would take time to heal. Clark was seen by another prison doctor the following day, May 14. This doctor noted superficial abrasions on Clark's left wrist and ordered an X-ray, which revealed no bony abnormality. By May 29, although Clark continued to complain of wrist pain, the abrasions to Clark's left wrist had completely healed, but resulted in two small scars.

An MRI performed several months after the incident showed no sign of injury, but revealed that a small ganglion cyst had developed in a 4 mm area on Clark's left wrist. A ganglion is a collection of nerve cell bodies or a cyst that commonly is found attached to the tendon sheath or the tendon of the hand, foot or wrist. Ganglion cysts are often treated by "waiting and watching" because they sometimes disappear on their own. Ganglion cysts can be painful, at which point immobilization of the hand may be recommended. Also, the cyst may grow larger,

requiring aspiration of the fluid or surgery.

In Clark's case, the medical staff concluded that no further treatment was necessary. The prison's medical records indicate that Clark never sought pain medication for his wrist from either the medical staff or the prison commissary.

## II. DISCUSSION

On appeal, Clark raises several arguments that are clearly without merit and which we address only briefly. First, the district court did not abuse its discretion when it denied Clark's June 2004 and November 2005 motions to amend his complaint due to prejudice to the defendants, who already had filed summary judgment motions, one of which already had been ruled upon. See Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003) (explaining that, although motions to amend are to be freely granted when justice so requires, the district court may deny the motion for, among other things, undue prejudice to the defendant).

Second, the district court did not abuse its discretion when it denied Clark's motion for a default judgment because, contrary to Clark's claims, the defendants defended against every claim Clark asserted and Clark failed to produce any evidence that the defendants committed perjury.

Third, the district court properly dismissed without prejudice Clark's claims against defendants Dr. Jae Shim, Mark Anderson and Brian Argutto because Clark

8

failed to serve these defendants within the time required under Federal Rule of Civil Procedure 4(m), failed to request an extension of time for service, and, in any event, failed to show good cause for extending the service period. See Fowler v. Jones, 899 F.2d 1088, 1095 (11th Cir. 1990).

Fourth, because defendants Anderson and Argutto were never served and thus were properly dismissed, the district court did not err in granting summary judgment on Clark's Eighth Amendment excessive force claim relating to them, including the initial application of handcuffs. See Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (explaining that we may affirm on any ground that finds support in the record).

Fifth, the district court did not err in granting summary judgment on Clark's Eighth Amendment medical treatment claims as to the cyst on Clark's wrist because even assuming arguendo that the cyst was an objectively serious medical need, Clark received an MRI and has not shown deliberate indifference to a serious medical need. See Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003); Brown, 387 F.3d at 1351.

Sixth, the district court properly granted summary judgment as to Clark's Fifth Amendment due process claim because Clark failed to present evidence of a protected property interest in the withdrawn prisoner account funds because he consented to their withdrawal. Furthermore, to the extent Clark brought a claim

under the Federal Tort Claims Act for the mishandling of those account funds after they were withdrawn, Clark failed to exhaust his administrative remedies.

In addition to the above, Clark argues that the district court erred when it granted summary judgment on his excessive force claim against Ward, who applied the excessive force of repeatedly tightening the left hand cuff in response to Clark's complaints of pain and numbness and kicking Clark, and against Lyngaas, Berrios, Soto and Johnson, who were present in the holding cell during Ward's actions and failed to intervene.[2]  We now address these claims.

Under the Eighth Amendment, "'whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm.'"  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005)

---

[2]We reject the defendants' claims that Clark failed to exhaust his administrative remedies as to these particular Eighth Amendment claims.  On the portion of the BP-8 form describing his specific complaint, Clark wrote, "On May 1, 2002, in contrariety [sic] to BOP Regulatory directives governing the use of mechanical restraints I was brutally tortured by staff while other staff present refused to intervien [sic], and as a result of such torture I sustained severe physical and psycological [sic] injuries."  On May 30, 2002, Clark completed a Request for Administrative Remedy, case number 269769-F1, in which he stated the following:

> On May 1, 2002, in contrariety [sic] to BOP regulatory directives governing the use of mechanical restraints, I was brutally tortured by staff while other staff that were present callusly [sic] refused to intervene.

It is clear from the record that the BOP was given sufficient notice to investigate Clark's allegations of (1) excessive force in the holding cell after he was placed in hand restraints and (2) failure to intervene.  See Jones v. Bock, __ U.S. ___, 127 S. Ct. 910, 922-23 (2007).

(quoting Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987)).[3]  In determining whether the force was applied maliciously and sadistically to cause harm, courts consider a variety of factors, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quotation marks ommitted).  "From consideration of such factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  Id. at 1300-01 (internal quotation marks omitted).

However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S. Ct. 995, 1000 (1992).  Rather, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de

_____

[3]We review de novo a district court's grant of summary judgment, viewing all the facts in the record in a light most favorable to the non-moving party.  Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).  Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Clark also argues that the district court erred in considering the defendants' second summary judgment motion because that motion exceeded the page limit prescribed by the local rules.  The district court's decision to consider the second summary judgment motion was within its discretion and falls under the district court's power to control its docket.  See Young v. City of Palm Bay, 358 F.3d 859, 863-64 (11th Cir. 2004).

11

minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. (quotation marks omitted)

Here, accepting as we must Clark's version of events, we conclude that the district court erred in granting summary judgment on Clark's Eighth Amendment excessive force claim. As Clark describes it, Ward repeatedly tightened Clark's left hand restraint in response to Clark's complaints of pain and numbness. Ward also kicked Clark to the floor hard enough that Clark hit his head and became disoriented and dazed.

During this treatment, Clark alleges that he was subjected to threatening and abusive language. See Bozeman, 422 F.3d at 1271 n.11 (explaining that prison guards' words, though not determinative, are relevant to the prison guards' malicious intent). According to Clark, he was repeatedly taunted for being "a litigator." One guard present allegedly told Clark that the treatment he was receiving was to teach Clark a lesson for being a litigious prisoner and, in response to Clark's complaints of pain, threatened to kill Clark. Other guards present not only failed to intervene, but allegedly encouraged Ward. Furthermore, this alleged treatment continued for approximately twenty minutes and stopped only after Clark agreed not to file any more lawsuits. Under Clark's version of events, Clark was safely restrained in handcuffs in a secure holding cell and was fully complying with the guards' instructions to stand facing the wall. See, e.g., Bozeman, 422

12

F.3d at 1271-72 (involving the malicious application of force after the threat had passed and the inmate had agreed to comply).

In other words, Clark presented evidence from which a jury could conclude that Ward, with other guards looking on approvingly, applied force maliciously and sadistically to cause Clark harm and not in a good faith effort to restore or maintain discipline. Furthermore, a jury could conclude that the force applied actually caused Clark harm. The abrasions and nerve damage to Clark's left wrist took several weeks to heal and left scars and a possible ganglion cyst. Clark also alleges that he still experiences some pain, numbness and stinging. While Clark's injuries were not severe, we cannot say that they were de minimis.

In sum, the evidence viewed in a light most favorable to Clark is sufficient to support a jury finding that Ward violated Clark's Eighth Amendment rights in the holding cell of the Lieutenant's office.[4] Furthermore, because liability can be imposed upon prison guards who are present at the scene and who are in a position to intervene but fail to take reasonable steps to stop excessive force by other guards, a jury could also conclude that defendants Lyngaas, Berrios, Soto and Johnson violated Clark's Eighth Amendment rights by being present in the holding

---

[4]Under our circuit precedent, where an Eighth Amendment excessive force violation is established, "there is no room for qualified immunity." Johnson v. Breedon, 280 F.3d 1308, 1321-22 (11th Cir. 2002). Therefore, to the extent defendants asserted that they were entitled to qualified immunity, that argument is unavailing.

13

cell and in a position to intervene, but failing to intervene.  See Skrtich, 280 F.3d at 1301; Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986).  Accordingly, we reverse the district court's entry of summary judgment in favor of defendants Ward, Lyngass, Berrios, Soto and Johnson on Clark's excessive force claim as it relates to events occurring inside the holding cell of the Lieutenant's office.  We conclude that factual issues exist as to what the actions were of Ward and Clark in the holding cell and whether Lyngaas, Berrios, Soto and Johnson were present in the cell when Ward's actions occurred and, if present, were in a position to intervene and failed to do so.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**