Edwrick **FOWLER**, Plaintiff–Appellant,

v.

Charlie **JONES**, Captain Carver, Willie E. Johnson, Warden, Asst. Warden Murphy, Defendants–Appellees.

No. 87–7718.

United States Court of Appeals, Eleventh Circuit.

April 30, 1990.

---

**26.** *See supra* at 1084.

Edwrick Fowler, Bessemer, Ala., Peter S. Mackey, Mobile, Ala., for plaintiff-appellant.

David Bjurberg, Stacey S. Houston, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before JOHNSON and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

PECKHAM, Senior District Judge:

Plaintiff Edwrick Fowler appeals from a judgment against him in an action brought pursuant to 42 U.S.C. § 1983. He asserts that the district court erred in denying his motion for appointment of counsel, in denying him a continuance so that he could perfect service on the three defendants who had not been served, in having a magistrate effectively preside over the trial without the plaintiff's consent, and in granting a directed verdict in favor of the defendant Charlie Jones.

I. *Relevant Case History.*

On February 11, 1985, plaintiff, who was incarcerated at Holman Prison, filed a complaint pursuant to 42 U.S.C. § 1983 alleging that prison officials had infringed upon his constitutional right to practice religion and had changed his work assignment in retaliation for his practice of religion and exercise of his legal rights. His complaint named four officials as defendants: Warden Willie E. Johnson; Assistant Warden James Murphy; Captain James Carver; and Assistant Warden Charlie Jones. On February 14, 1985, the district court granted plaintiff's motion to proceed *in forma*

---

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

*pauperis* and directed that service be made on defendant Charlie Jones.

Plaintiff wrote a letter to the Clerk of Court on March 4, 1985 in which he advised the court that although he had named four defendants in their individual and official capacities, only one had been ordered served. He additionally requested that he be provided with a file copy of his complaint. In response, the clerk of court sent a form letter indicating only that if the plaintiff wished to receive file copies, he would have to provide a stamped, self-addressed envelope. The clerk of court gave no indication that the court either would or would not serve the remaining defendants.

Plaintiff filed on October 1, 1986 a motion for appointment of counsel which was denied by the magistrate. Plaintiff objected to the magistrate's order and the court affirmed the magistrate's denial of counsel on November 10, 1986. Plaintiff renewed his request for appointed counsel as part of his Motion for Extension of Time filed October 21, 1987. Although the court issued no written order again denying counsel, no counsel was appointed for plaintiff.

Throughout the numerous letters and pleadings filed prior to the trial, the plaintiff consistently referred to "defendant*s*" and captioned his pleadings "Fowler v. Jones *et al., Defendants*" (emphasis supplied). His interrogatories and requests for admissions were directed to all four defendants, and his pretrial statements listed four defendants. The court, although it referred to the singular defendant Charlie Jones in its first order granting plaintiff's request to proceed *in forma pauperis*, in its pretrial order, and in the caption to its order denying defendant Jones' motion for summary judgment, generally captioned the case "Fowler v. Jones *et al.*, Defendant*s*" (emphasis supplied). While pleadings filed on behalf of defendant Charlie Jones usually used a singular caption and referred to a singular defendant in the

text, the pretrial statement filed by the State Attorney General on October 1, 1986, uses the headings "Pretrial Statement of the Defendants" and "2. Defendants" and refers to plural defendants at several points in the text.[1]

On September 28, 1987, Judge Hand presided over the selection of a jury. The case was put over for trial so that plaintiff could arrange for his witnesses to be available. The trial was held as scheduled on November 4, 1987. At the outset of the trial, Magistrate Milling made the following statement to the parties:

> I'm Burt Milling and I'm the Magistrate. Judge Hand is presiding but in the last two days he has lost his voice and for the record he is sitting here and will be presiding at the trial, but I'll be acting as his voice.

Tr. at 2:9–13. When the jury entered the courtroom, the magistrate again explained:

> My name is Burt Milling and I want to explain to you why you have two judges up here.
>
> I'm a United States Magistrate. Judge Hand I believe presided at the striking of your jury before but he has lost his voice in the last couple of days so I'm going to sit up here and serve as his voice, as his mouthpiece, and he will be presiding over the trial so that will let you know why we are both sitting up here.

Tr. at 9:13–21. Magistrate Milling then proceeded to conduct the trial and make rulings on the motions as they arose. With the exception of the motions for directed verdict, where the court each time recessed prior to making a ruling, there was no indication in the record of the existence of communications between Magistrate Milling and Judge Hand, or of the method of any such communications. It simply appears from the record that Magistrate Milling made rulings and Judge Hand allowed the trial to proceed.[2]

---

**1.** While these appear to be either typographical or grammatical errors, they may have contributed to the plaintiff's belief that the action was proceeding against all four defendants and his resulting failure to request corrective action.

**2.** On page 83 of the trial transcript, the notation before each statement by the presiding officer changes from "THE MAGISTRATE" to "THE COURT". However, it appears that this is simply a clerical error and does not reflect that Judge Hand was the speaker at that point. In

Prior to the calling of the first witness, as part of his opening remarks, Mr. Fowler stated, "I want the jury to understand that all the people that will testify are Defendants in this case and Mr. Jones is a Defendant and Captain Carver is a Defendant." Tr. at 13:7–10. At that point, the magistrate stated his understanding that there was only one defendant, Mr. Jones. Mr. Fowler indicated his belief that the magistrate was mistaken and that there were four defendants named in his complaint. Counsel for defendant then explained that the other defendants had not been served. The magistrate indicated that the trial would proceed against the one defendant who was properly served. Mr. Fowler asked the court, "Was it my responsibility to have all of them served?" and then requested a continuance in order to do so when the magistrate replied in the affirmative. Tr. at 14:17–18. The magistrate denied that motion and the trial proceeded as to one defendant. On several occasions during the trial the plaintiff's witnesses were precluded from giving testimony as to statements made by the other three defendants, and the testimony was specifically limited to the statements and actions of Charlie Jones. Tr. at 26:6–19, 41:20–25, 48:2–8.

At the close of plaintiff's presentation of evidence on each issue, the defendant moved for a directed verdict. The magistrate announced the court's finding that the plaintiff had failed to present sufficient evidence of his claims of retaliatory transfer and infringement on his First Amendment right to practice religion. The jury was dismissed and Judge Hand subsequently issued a written order granting a directed verdict in favor of the defendant on all claims.

## II.  Conduct of the Trial by the Magistrate.

Appellant first argues that he is entitled to a new trial because the magistrate effectively conducted the trial, and appellant

had not consented to trial before a magistrate as required by the Magistrate's Act, 28 U.S.C. § 636. Appellee contends that because an Article III judge was present and the magistrate purported to be acting as his voice, the Article III judge was presiding and no consent was required. Secondly, appellee contends that plaintiff's failure to object to the magistrate's actions at any time during the trial amounted to a waiver and that plaintiff is therefore precluded from raising this argument on appeal.

■■■ We turn first to the appellee's waiver argument, which is without merit. While failure to raise an issue, objection or theory of relief in the first instance to the trial court generally precludes raising the matter on appeal, Denis v. Liberty Mutual Ins. Co., 791 F.2d 846, 849 (11th Cir.1986), there is clear case law to the contrary on the specific issue before us. Consent to a magistrate presiding over a jury trial pursuant to 28 U.S.C. § 636(c) must be express. In Hall v. Sharpe, 812 F.2d 644, 647 (11th Cir.1987), this Circuit addressed the argument offered by appellee and held that "[e]xplicit, voluntary consent is crucial" to the procedure allowing referral of jury trials to magistrates. The panel went on to explain that

> the waiver approach does violence to Congress' specification in § (c) that trial before a magistrate must be predicated upon express consent. That the parties proceeded to trial neither fulfilled nor removed the requirements of § (c), nor invested a non-Article III officer with authority in excess of that provided by law.

Id. at 649. Likewise in the present case, the fact that Mr. Fowler failed to object to the arrangement set forth by the magistrate is no substitute for the express consent required if we find that the magistrate, and not the district court judge, presided over the trial.

■■ The question then presented is whether, when an Article III judge is physi-

---

any event, this court's decision would be unaffected even were Judge Hand to have actively

presided from that point in the trial.

cally present at a trial conducted by a magistrate, the Article III judge can be said to be "presiding" such that consent to trial by a magistrate is not required. In this instance, we find that the mere physical presence of the Article III judge, without more, does not amount to his presiding over the trial so as to obviate the need for consent pursuant to 28 U.S.C. § 636(c).

■ Appellee asserts that Judge Hand presided over the trial because Magistrate Milling "indicated more than once that he was merely Judge Hand's mouthpiece." Appellee's Br. at 20. However, the appellee's brief does not suggest, any more than the trial record itself does, that there was communication between the judge and the magistrate during the course of the trial, or what form such communication might have taken. The trial record is devoid of any sign of participation by the Article III judge. On the contrary, the language used by the magistrate on many occasions suggests that he made decisions on the parties' motions without any consultation of the judge.[3] On no occasion did the judge intervene to correct or change a ruling by the magistrate. The only suggestion of consultation between the two was the fact that the court recessed after each motion for directed verdict prior to making its ruling.

The circuit courts have found the Magistrate's Act to be consistent with Article III and due process requirements based on the statutory safeguards which require either that magistrates' dispositive decisions are subject to *de novo* review or that the parties expressly consent to trial by a magistrate. *See, e.g., Collins v. Foreman*, 729 F.2d 108 (2d Cir.1984), *cert. denied*, 469

U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). Congress created that statutory structure mindful of the concern that delegation to magistrates without such safeguards would violate the constitutional requirement that the judicial power of the United States must be vested in Article III courts. S.Rep. No. 74 at 4, U.S.Code Cong. & Admin.News 1979, p. 1472. As to the section of the Magistrate's Act with which we are concerned, allowing magistrates to conduct civil trials, "valid consent is the linchpin of the constitutionality of 28 U.S.C. § 636(c)." *Adams v. Heckler*, 794 F.2d 303, 307 (7th Cir.1986).

■ Based on the record before us we cannot find that the judge "presided" over the trial such that the assistance of the magistrate was incidental and would not require express consent pursuant to 28 U.S.C. § 636(c).[4] We cannot presume, where no evidence exists in the record to support such a presumption, that the Article III judge was playing an active role in making rulings, or even in reviewing the magistrate's rulings as they were made during the course of the trial. To allow the requirement of express consent to be circumvented by having an Article III judge be physically present while a magistrate conducts a trial runs counter to the clear constitutional and statutory limitations on magistrates' jurisdiction. Therefore, we must reverse the judgment and remand for a new trial.

### III. *Denial of a Continuance.*

■ Denial of a continuance is within the broad discretion of the district court

---

**3.** For example, the denial of Mr. Fowler's request for a continuance in order to serve the remaining defendants appears from the trial transcript to have been made by the magistrate without any opportunity for consultation with the judge.

MR. FOWLER: Was it my responsibility to have all of them served?
THE MAGISTRATE: Yes.
MR. FOWLER: I did not know that so I ask for a continuance to reconstruct.
THE MAGISTRATE: All right, that will be denied and we are going to proceed and this has been set for trial for some time. I think it was set the last time and the continuance was grant-

ed and I don't know that it was raised at the last hearing at all so we are ready to proceed as to this Defendant.
Tr. 14:17–15:3.

**4.** We do not hold, however, that an arrangement for a magistrate to act as a judge's "voice" could never be permissible without the parties' consent. It is possible, given a record which clearly demonstrates active participation by the judge and communication in some form between the judge and the magistrate, that such an arrangement would conform to the requirements of the Constitution and the Magistrate's Act.

and will not be overturned unless the denial is arbitrary or unreasonable. *Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987), citing *United States v. 2.61 Acres of Land*, 791 F.2d 666 (9th Cir.1985). In *Hashwani*, this Circuit adopted four factors to consider in reviewing denials of a requested continuance under the abuse of discretion standard: 1) the diligence of the party requesting the continuance to ready the case prior to the date set for hearing; 2) the likeliness that the need for continuance could have been met if a continuance was granted; 3) the extent to which granting the continuance would have been an inconvenience to the court and the opposing party, including its witnesses; and 4) the extent to which appellant might have suffered harm as a result of the denial. *Id.*

■ Mr. Fowler requested the continuance in question so that service could be completed on the three defendants he had named in his complaint who had not been served. It seems apparent that the need for continuance could have been met had the continuance been granted, *i.e.*, the remaining defendants could have been served.[5] Likewise, while the full scope of harm is impossible to determine, it is clear that the plaintiff-appellant was harmed by the trial going forward as to only the one defendant who had been served. As set out above, there were at least three instances in which witnesses' testimony was limited by the court based on the fact that only Mr. Jones had been served.

On the other hand, the inconvenience to the court and appellee of granting a continuance at the point it was requested by the plaintiff would have been considerable. A jury had already been selected and reconvened for the trial. Granting a continuance would have required the court to dismiss that jury. In addition, the time required for service on the remaining defendants, and pretrial motions relating to those defendants would undoubtedly have been considerable, requiring the Attorney General to duplicate many of the efforts it had made on behalf of defendant Jones.

■ The remaining factor regarding the diligence of the appellant in readying the case for trial is complicated in this instance by his status as a prisoner and the role of the clerk of the court and the U.S. Marshal Service in serving the complaints of parties proceeding *in forma pauperis*. Title 28, U.S.C. § 1915(c) provides that where a party is proceeding *in forma pauperis*, as was the appellant in this case, the "officers of the court shall issue and serve all process, and perform all duties in such cases." Federal Rule of Civil Procedure 4(c)(2)(B)(i) specifies that "[a] summons and complaint shall, at the request of the party seeking service or such party's attorney, be served by a United States marshal ... (i) on behalf of a party authorized to proceed in forma pauperis pursuant to Title 28, U.S.C. § 1915...."

The Second, Fifth and Ninth Circuits have all considered the extent to which a party proceeding *in forma pauperis* may rely on the officers of the court or the U.S. Marshal to effect proper service. In *Puett v. Blandford*, 895 F.2d 630, 635 (9th Cir. 1990), the Ninth Circuit held that

> an incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint, and, having provided the necessary information to help effectuate service, plaintiff should not be penalized by having his or her action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform the duties required of each of them under 28 U.S.C. § 1915(c) and Rule 4 of the Federal Rules of Civil Procedure.

*See also, Davis v. Department of Corrections*, 446 F.2d 644, 645 (9th Cir.1971) (reversing district court's dismissal for failure to effect service because "the officers of the court should have effected service.")

---

5. Although Rule 4(j) requires that service be effected within 120 days after filing the complaint, the court can disregard a failure to meet the 120-day limit if the plaintiff can show good cause why such service was not made. In *Ro-*

*mandette v. Weetabix Co., Inc.*, 807 F.2d 309 (2nd Cir.1986), the court found good cause for delay where an incarcerated pro se litigant relied on service by the U.S. Marshals, who did not properly effect service.

The Second Circuit and Fifth Circuits have also held that a plaintiff proceeding *in forma pauperis* is entitled to rely upon service by the United States Marshal. *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2nd Cir.1986) (holding that trial court's dismissal for failure to effect service was an abuse of discretion where plaintiff had done everything in his power to effect personal service through the U.S. Marshal's Service); *Rochon v. Dawson*, 828 F.2d 1107 (5th Cir.1987) (holding that *in forma pauperis* litigant is entitled to rely on United States Marshals for service and should not be penalized where failure to serve is through no fault of the litigant's). We agree with the reasoning of the Second, Fifth and Ninth Circuits that *in forma pauperis* litigants should be entitled to rely on the court officers and United States Marshals to effect proper service, and should not be penalized for failure to effect service where such failure is not due to fault on the litigant's part. We therefore turn to the question of whether Mr. Fowler made sufficient efforts to ensure that proper service was made in this instance.

In *Rochon,* although the Fifth Circuit held that an *in forma pauperis* litigant is entitled to rely on United States Marshals and should not be penalized for failure to properly effect service of process where such failure is through no fault of the litigant, the court went on to uphold the district court's dismissal for failure to prosecute because of "inaction and dilatoriness" on the part of the plaintiff. 828 F.2d at 1110. The facts in that case are distinguishable from those in the case at hand, however. In *Rochon,* the trial court had issued an order in which it specifically noted that the individual defendant, Dr. Dawson, had not been served. Despite this notation in the court's order, which was sent to the plaintiff, the plaintiff never requested that Dr. Dawson be served. Moreover, the plaintiff appeared not to have provided a correct address for the defendant. The Fifth Circuit held that while incarcerated plaintiffs proceeding *in forma pauperis* may rely on service by the U.S. Marshals, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Id.*

In this instance, however, in contrast to the situation in *Rochon,* the plaintiff-appellant did not remain silent. Mr. Fowler specified four defendants in his initial complaint filed on February 11, 1985. On February 14, 1985, the court issued a form order signed by a magistrate which granted the plaintiff's request to proceed *in forma pauperis.* That form order specified only "Charlie Jones" under the section on defendants to be served, and the caption for the order was singular: "Edwrick Fowler, Plaintiff v. Charlie Jones, Defendant." When Mr. Fowler noted that the court had only ordered service on one defendant, he notified the court of that deficiency with the expectation that the remaining defendants would then be served. He then continued to conduct the case as if all four defendants had been served, and it is evident from his comments at the outset of the trial that he believed the case to be proceeding on that basis.

Appellee asserts that Mr. Fowler should have been on notice that the three defendants had not been served based on the fact that he himself notified the court of that situation in his March 4, 1985 letter and on the fact that counsel for defendant referred to a single defendant throughout its pleadings. As discussed above, however, both the plural caption used by the court throughout, and the headings and language used in the defendant's pretrial statement, may have reinforced plaintiff's belief that the case was proceeding against all four defendants. While plaintiff might have been more persistent in his inquiries regarding service, it was not unreasonable for him to rely on the clerk of courts, in conjunction with the U.S. Marshals, to properly effect service on the remaining defendants once he had brought the deficiency to the clerk's attention. The plaintiff's reliance was particularly reasonable given that he was incarcerated and unrep-

resented, so that neither he nor legal counsel acting on his behalf was able to check the case file at the courthouse to determine the status of service.

Given the court officers' role in serving *in forma pauperis* complaints pursuant to 28 U.S.C. § 1915(c) and Fed.Rule.Civ.Pro. 4(c)(2)(B)(i), and the plaintiff's reasonable belief that the defendants had been served, we find that the court's denial of a continuance was an abuse of discretion. The balance of factors, even given the considerable inconvenience to the court, tilts in favor of the appellant. Thus, we hold that plaintiff-appellant must be given the opportunity to serve the remaining defendants prior to the district court conducting a new trial.

## IV. *Failure to Appoint an Attorney.*

██ Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir.1987); *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir.1985).

██ In this instance, in contrast to the facts in *Poole*, where the trial court had failed to even rule on the plaintiff's motion for appointment of counsel, the magistrate issued a written order denying appointment of counsel in which he indicated that he had properly considered the factors set out in *Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir.1982), in which the Fifth Circuit applied the same "exceptional circumstances" standard used by this Circuit. Following plaintiff's objection to the magistrate's order, Judge Hand issued a written order affirming that decision. We find that the denial of plaintiff's motion was proper as there were no exceptional circumstances justifying appointment of counsel. The plaintiff's claims are relatively straightforward and involve incidents which took place in the prison, most of which plaintiff witnessed himself. Moreover, as demonstrated by the quality of plaintiff's written pleadings and his conduct of the trial, as well as by plaintiff's own statements about his experi-

ence assisting other inmates in legal matters, it is clear that the plaintiff is an accomplished writ writer who was capable of representing himself adequately in this matter. *See Archie v. Christian*, 812 F.2d 250, 253 (5th Cir.1987).

## V. *Conclusion.*

Because we find that this case must be reversed on other grounds, we need not and cannot reach the issue of whether the district court was correct in directing a verdict in favor of the defendant. While we would be inclined, on the basis of the record presently before us, to affirm the trial court's judgment, the record has been flawed by the court's denial of a continuance so that all defendants could be served and by the conduct of a trial by a magistrate without the requisite consent of the parties.

Accordingly, we VACATE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.

EDMONDSON, Circuit Judge, dissenting:

I dissent from the court's judgment and from two parts of the court's opinion. First, I am unwilling to conclude from a silent record that a United States District Judge, although temporarily unable to speak, abandoned his responsibility and did not preside over a trial at which he was present. From the record, we simply can not rule out the possibility that the magistrate and judge communicated by writing, by whispers or by signals. Appellant has failed to carry his burden of proving trial court error, and I see no reason to presume the worst about an Article III judge.

Second, while I agree that an incarcerated plaintiff has some right to rely on the clerk and marshals to serve defendants, I cannot agree that the district court erred in declining to grant a continuance in this case. I recognize that plaintiff did something about inquiring about the lack of service, but he did not do much. Certainly, nothing in the record reflects repeated communications to the court to ensure that

service was made before trial. Plaintiff was an accomplished and experienced writ writer capable of representing himself. Plaintiff knew well in advance of trial that there was a problem with service; and, in addition, he knew that service on the parties was important. He failed, however, to press for confirmation of service; the record indicates no reason why he could not have easily been more diligent than he was.

I do not understand how the court can say that plaintiff reasonably believed each defendant had been served. More important, he certainly had reason to believe that service had not been completed. No one told him that marshals or the clerk had effected additional service; and the last information directly on point sent by the court indicated that only defendant Jones had been served. From the time plaintiff notified the court that only one defendant had been ordered served until the day of trial, 32 months had passed in which plaintiff could have pushed for service to be made or for a definitive statement that it had been made; but he never did that. To grant a continuance on the day of trial would have been, as today's court opinion observes, a considerable inconvenience to many people. I cannot say that the district court abused its discretion or acted arbitrarily in these circumstances. *Cf. Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 312 (2d Cir.1986) (dismissal of in forma pauperis plaintiff's complaint for lack of service reversed where plaintiff did "everything in his power" to comply with service rules).

I would affirm the judgment of the district court.