[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10150
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00502-MTT


MARVIN TURNER,

Plaintiff–Appellant,

versus

WARDEN,
GDCP,
DEPUTY WARDEN GLEN JOHNSON,
GDCP,
WILLIAM POWELL,
EARNEST MINTZ,
Special Management Unit Manager, GDCP,
MAJOR MICHAEL MOORE,
GDCP,
WESLEY BAKER,
Chief Counselor, GDCP,
COUNSELOR BENJAMIN MURPHY,
GDCP,
COUNSELOR RICKY FOSKEY,
SMU Counselor, GDCP,
HOOBLER,
former SMU Counselor, GDCP,
JAMES BROWN,

Grievance Coordinator, GDCP,

COUNSELOR GARY CALDWELL,
GDCP,

DEPUTY WARDEN VICTORIA MALONE,
GDCP,

                                          Defendants–Appellees,

COMMISSIONER, DEPARTMENT OF CORRECTIONS,

                                          Defendant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 25, 2016)

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Marvin Turner appeals the district court's order granting summary judgment to Defendants on his Eighth and Fourteenth Amendment claims arising from his confinement in Georgia Diagnostic and Classification Prison's ("Georgia Diagnostic") special management unit ("SMU").  After careful review, we affirm.

I.    **Background**

Plaintiff is serving a life sentence without the possibility of parole for murder.  During his incarceration, Plaintiff racked up a number of disciplinary reports for escaping, assaulting prison officers, possessing a weapon, and setting a

2

fire.  After Plaintiff's escape, he was placed in the SMU at Georgia State Prison in Reidsville.  He was later transferred to the SMU at Georgia Diagnostic in Jackson.

The SMU houses inmates with a history of disciplinary problems and who are deemed security or escape risks.  It consists of six wings, each of which contains 32 single-man cells.  Inmates are first assigned to E-wing, the most restrictive section, and then progress to F-wing, D-wing, and on to C, B, and A-wings.  In E-wing, inmates are allowed to have only state-issued property, such as a uniform, mattress, and books from the prison library.  They cannot have any personal property, nor can they have televisions.  As inmates move through the less-restrictive wings, their personal property is returned to them, including magazines, personal clothing, games, or cards; they receive color televisions; and they no longer have to wear handcuffs and leg irons when they come out of the cell.  Ultimately, an inmate is eligible to be transferred back to the general population after progressing through each wing.  But if an inmate receives a disciplinary report, fails to follow instructions, or refuses to participate in cell inspections, he may be sent back to E-wing.  No matter which wing they are in, though, all inmates in the SMU receive recreation time, showers, meals, visitation, legal materials, and medical care.

Plaintiff did not receive any kind of orientation to inform him of the procedures in place at Georgia Diagnostic's SMU.  But he did learn from the

3

warden that if he moved through the less restrictive wings, he would be transferred back to the general population.  And, while he argues that there was no rule that he had to participate in daily inspections of his cell, he learned that he could be placed back in a more restrictive wing if he refused to comply.

Between November 2009 and October 2010, Plaintiff moved all the way up to A-wing, where he was allowed to have all his personal property and a television in his cell.  But then Plaintiff refused to participate in the daily inspections because he believed they were not mandated by prison policy.  As a result, Plaintiff was moved back to E-wing from October 1 until November 19, 2010.  While Plaintiff was in E-wing, he received visitation from his niece and mother four times, received meals, and had opportunities for outdoor recreation.

Plaintiff also testified that he was twice placed in a "strip cell" in October 2010.  A strip cell is used for violent inmates who pose a threat to themselves or others, but confinement is supposed to last no more than eight hours and is not supposed to be used as punishment.  When an inmate is placed in a strip cell, all personal and state-issued property is confiscated and the inmate is given only a paper gown and booties to wear.  One time Plaintiff was left naked in a strip cell for twelve hours.  Later, he was placed in a strip cell naked for ten days and was left without any food for a 24-hour period.

4

In November 2010, Plaintiff was moved from E-wing to C-wing and his personal property was returned to him.  On December 28, 2010, Plaintiff filed this action under 42 U.S.C. § 1983, alleging numerous constitutional violations related to his confinement in the SMU and strip cell.[1]  Defendants include the warden and various prison officials at Georgia Diagnostic.  Following a frivolity review and the dismissal of several claims and defendants, only Plaintiff's individual-capacity Eighth and Fourteenth Amendment claims remained.  The court granted summary judgment to Defendants on the Eighth Amendment claims and the due process claim based on confinement in the SMU.  *See Turner v. Upton*, No. 5:10-CV-502 (MTT), 2013 WL 4852689, at *14 (M.D. Ga. Sept. 10, 2013).  The court let Plaintiff's due process claim related to his ten-day confinement in a strip cell proceed to trial.  *See id.*  A jury later found in favor of Defendants.

Plaintiff appeals the court's summary judgment order and its dismissal of several defendants for failure to serve.

## II.    Discussion

We review a district court's grant of summary judgment *de novo*, construing all inferences in favor of the nonmoving party.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[1]  On March 1, 2011, Plaintiff was transferred to Macon State Prison.

5

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of

fact is 'material' if, under the applicable substantive law, it might affect the

outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256,

1259–60 (11th Cir. 2004).

A.    Due Process Claim

Plaintiff insists that the district court resolved factual disputes and failed to

view the evidence in the light most favorable to him. Plaintiff also complains

about the conditions of the SMU,[2] asserts that Defendants failed to periodically

review his confinement status, and argues at length that prison officials did not

follow the prison's standard operating procedures and thus operated the SMU

arbitrarily. For these reasons, he argues that his due process claim should have

survived summary judgment.

To show that Defendants placed Plaintiff in the SMU without due process,

Plaintiff must first establish that he had a liberty interest in freedom from

confinement in the SMU. A liberty interest protected by the Fourteenth

Amendment may arise from the Due Process Clause itself, or state law may create

---

[2]  Plaintiff argues that his initial placement without a hearing in the SMU at Georgia State Prison and his subsequent transfer to Georgia Diagnostic violated due process. But Defendants, all of whom are officials at Georgia Diagnostic, played no role in these decisions. And because Plaintiff did not name as defendants any Georgia State Prison officials who were actually responsible for his initial placement in the SMU and transfer, we do not review these claims.

6

a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). A liberty interest can arise from the "Due Process Clause of its own force" if a prisoner's liberty is restrained in a way that exceeds the sentence imposed by the court. *See id.* at 484; *cf. Vitek v. Jones*, 445 U.S. 480, 487–94 (1980) (prisoner had liberty interest in not being involuntarily confined to mental hospital without a finding that he was mentally ill and could not secure adequate treatment in correctional facility); *Kirby v. Siegelman*, 195 F.3d 1285, 1290–92 (11th Cir. 1999) (prisoner who had never been convicted of a sex crime had liberty interest in not being classified as a sex offender without due process protections). But the Supreme Court "ha[s] held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Thus, a prisoner does not have "an interest [based on the Due Process Clause] in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." *Hewitt v. Helms*, 459 U.S. 460, 466–67 (1983), *modified on other grounds by Sandin*, 515 U.S. at 481. Because Plaintiff was only placed in a more restrictive section of the prison, he has failed to

show that his incarceration in the SMU exceeded the sentence imposed by the court.

Instead, to establish a due process claim, Plaintiff must show that he had a state-created liberty interest in avoiding particular conditions of confinement arising from state policies or regulations. *See Wilkinson*, 545 U.S. at 222. In other words, he must show that the conditions in the SMU "impose[d] atypical and significant hardship[s] on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves" compared to ordinary prison. *Wilkinson*, 545 U.S. at 223.

Plaintiff relies on *Wilkinson v. Austin*, where the Supreme Court held that prisoners had a liberty interest in avoiding confinement in a "Supermax" prison because the conditions there constituted an atypical and significant hardship. *Id.* at 224. Specifically, almost all human contact was prohibited, including conversation between cells; a light in the cell was on for 24 hours per day; exercise was only allowed in a small indoor room; confinement was indefinite and was only reviewed annually; and placement in the Supermax facility disqualified otherwise eligible inmates from parole consideration. *Id.* at 223–24. The Supreme Court explained

8

that, "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224.

According to the undisputed evidence, the conditions in the SMU were similar to those in the general population. Plaintiff regularly received meals and five hours of outdoor recreation time each week. He was allowed to shower three times per week. Unless he was in the most restrictive wing, he was allowed to have his personal property and in some wings even had a television in his cell. Plaintiff was not denied human contact and even received visitation on the weekends. These conditions are a far cry from those in *Wilkinson*.

Plaintiff further asserts that he was denied sleep because the prison kept the lights on during the day when he preferred to sleep. He says it was quiet during the day, but it was more difficult to sleep at night because prisoners in the SMU made a lot of noise. So, he preferred to stay up at night and do legal work. But his preference to sleep during the day does not create an atypical and significant hardship. Even though prisoners disturbed Plaintiff at night by making noise, he has not shown how this differs from normal prison conditions. Nor does he claim that the lights in the cell prevented him from sleeping like in *Wilkinson*. *See id.* at 214 (light remained on in cell at all times, and inmates who attempted to shield the light to sleep were subject to further discipline). On the contrary, he complains

9

that the night light in his cell was not bright enough for him to read and write. Therefore, the conditions in the SMU did not prevent him from sleeping.

In *Wilkinson*, officials reviewed the appropriateness of prisoners' confinement in the Supermax only once a year after an initial 30-day review. *Id.* at 224. Here it is undisputed that Plaintiff progressed through the less restrictive wings, so his confinement conditions were not static. If he progressed to A-wing, he knew he would be eligible for transfer to the general population. On the other hand, he knew that he would be placed in a more restrictive wing if he did not obey the guards' orders. He also unsuccessfully appealed his assignment to the SMU in December 2009. Even if he had not appealed his placement in the SMU, Plaintiff's confinement status was adjusted depending on his behavior, meaning his restrictions were reviewed far more often than in *Wilkinson*.[3]

In short, there is no combination of factors demonstrating that Plaintiff's incarceration in the SMU imposed an atypical and significant hardship compared to ordinary prison.[4] Consequently, Plaintiff had no liberty interest in avoiding

---

[3] To further distinguish *Wilkinson*, Plaintiff's assignment to the SMU did not affect his parole status, as he is not eligible for parole.

[4] We further find that the district court properly viewed the evidence in Plaintiff's favor, and Plaintiff fails to point to any *material* factual disputes regarding his claims. Plaintiff insists that there were no policies in place governing the operation of the SMU or requiring him to participate in inspections, but *Sandin* made clear that we must consider Plaintiff's conditions, not the existence or language of prison regulations. *See Sandin*, 515 U.S. at 484.

confinement in the SMU, and the district court correctly granted summary judgment to Defendants on this claim.

###### B.    Eighth Amendment Claims

Plaintiff next argues that the court erred by finding that the conditions of the SMU and strip cell did not violate the Eighth Amendment. He argues that he was deprived of basic human needs and that Defendants acted with deliberate indifference to the risks he faced in such conditions. The Eighth Amendment protects against "cruel or unusual punishments." U.S. Const. amend. VIII. The "cruel and unusual punishments" standard applies to the conditions of a prisoner's confinement. *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). To establish a violation of the Eighth Amendment, a prisoner must first show that a condition is an objectively "cruel and unusual deprivation," and second, that the officials responsible for the condition had the subjective intent to punish. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

As for the first element, the challenged condition must be extreme and "pose an unreasonable risk of serious damage to [an inmate's] future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Yet if prison conditions

11

are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

We have recognized "that administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987). Construing the facts in Plaintiff's favor, Plaintiff has failed to show that the conditions of his confinement created an unreasonable risk of harm to his health or safety. Even though he argues that he was left in a strip cell for ten days without clothing, there is still no evidence that he faced any serious harm. Indeed, his only complaint was that he was cold, but "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004). The prison temperature was set at 78 degrees in the summer and 74 in the winter, and Plaintiff does not assert that he experienced anything beyond mere discomfort, let alone that he was exposed to extreme temperatures in October when he was placed in the strip cell. *Cf. Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (freezing temperatures that allowed ice to form on cell walls and that persisted both day and night for several winters could violate the Eighth Amendment). And although he says he was not given any food for a 24-hour period, he was not regularly deprived of adequate nutrition and points to no evidence that his health was jeopardized due to this single deprivation.

12

Consequently, these conditions do not rise to the level of cruel and unusual deprivations.  Summary judgment on these claims was proper.[5]

### C.    Service of Process

After the district court ordered service on Defendants, the requests for waiver of service for four of them were returned unexecuted because those defendants no longer worked at Georgia Diagnostic.  The court ordered Plaintiff to provide current mailing addresses if he wanted to proceed with his claims. Plaintiff wrote two letters to the court explaining that he could not provide the defendants' addresses because he was incarcerated.  He suggested that the Georgia Department of Corrections or Office of the Attorney General would have that information.  Over a year later, the court entered an order to show cause why the claims against the unserved defendants should not be dismissed and faulted Plaintiff for failing to diligently pursue his claims against the unserved defendants. Plaintiff did not respond, but he later objected to the defendants' dismissal in response to the magistrate judge's report and recommendation.  The district court adopted the R&R and dismissed the unserved defendants.

We review for abuse of discretion a court's dismissal for failure to timely serve a defendant under Federal Rule of Civil Procedure 4(m).  *Lepone-Dempsey v.*

---

[5]  With respect to Plaintiff's strip cell due process claim, Plaintiff appeals the district court's decision to allow nominal damages but exclude compensatory damages in the absence of bodily injury.  Because Plaintiff lost on his claim at trial and does not appeal the jury's defense verdict, we need not address his damages argument.

13

*Carroll Cty. Comm'rs*, 476 F.3d 1277, 1280 (11th Cir. 2007).  This standard requires this Court to "affirm unless [it] find[s] that the district court has made a clear error of judgment, or has applied the wrong legal standard."  *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009).

Under Rule 4(m), the district court "must dismiss the action without prejudice . . . or order that service be made within a specific time" if the defendant has not been served within 120 days of the filing of the complaint.  Fed. R. Civ. P. 4(m).  The court must extend the time for service, however, if the plaintiff shows "good cause" for the failure.  *Id.*  For prisoners proceeding *in forma pauperis*, "[t]he officers of the court shall issue and serve all process."  28 U.S.C. § 1915(d).  We have held that the U.S. Marshals Service's failure to serve a defendant on behalf of an *in forma pauperis* plaintiff, through no fault of that plaintiff, constitutes "good cause" under Rule 4(m).  *Rance*, 583 F.3d at 1288.  We have further held:

> It is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison.  Thus, . . . as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes.

*Richardson v. Johnson*, 598 F.3d 734, 739–40 (11th Cir. 2010); *see also Fowler v. Jones*, 899 F.2d 1088, 1095–96 (11th Cir. 1990) (prisoner-litigant proceeding *in*

*forma pauperis* not at fault for failure of service when he acted reasonably by requesting service on the appropriate defendant and attempting to remedy any service defects he knew about).

According to the record, service was attempted only once on the four defendants. The district court did not make a finding that the defendants could not be located with reasonable effort. Even so, we find no reversible error. The above analysis of the merits of Plaintiff's constitutional claims applies equally to the unserved defendants. *Cf. Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("Several courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant.'" (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967))). Plaintiff has had ample opportunity to support his claims with evidence and to respond to Defendants' arguments that they did not violate his constitutional rights. The conditions of Plaintiff's confinement and his alleged lack of due process did not depend on any particular allegations against the unserved defendants. To remand this case for the district court either to direct further efforts to serve defendants or to make a finding that these defendants cannot be located would be futile and a waste of judicial resources. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802–03 (9th Cir. 1995) (affirming *sua sponte* summary judgment in favor of nonappearing party when

15

plaintiffs "had a full and fair opportunity to brief and present evidence on the issues raised by [defendant]," the same issues controlled as to the nonappearing defendant, and plaintiffs did not suggest that their case against that defendant would be any different).  We affirm the dismissal of the unserved defendants.

## III.    Conclusion

For the foregoing reasons, we affirm the court's order granting summary judgment to Defendants and dismissing the unserved defendants.

**AFFIRMED.**