[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10797
Non-Argument Calendar
_____

D.C. Docket No. 7:15-cv-00013-HL-TQL

DEMETRUIS DELFON CARTER,

Plaintiff - Appellant,

versus

WARDEN MARTY ALLEN,
Individually and in his official capacity,
OFFICER ANDERSON,
Individually and in his official capacity,
OFFICER WESTLAKE,
Individually and in his official capacity,
OFFICER BARBER,
Individually and in his official capacity,

Defendants - Appellees,

DEPUTY WARDEN CALVIN ORR,
individually and in his official capacity,
et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(March 6, 2019)

Before ROSENBAUM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Demetruis Carter, a Georgia prisoner represented by court-appointed counsel on appeal, appeals following an adverse jury verdict on his claims of First Amendment retaliation under 42 U.S.C. § 1983. He also appeals the denial of his motion for a new trial based on the failure to appoint counsel before trial. Carter presents three issues on appeal: (1) whether the district court plainly erred by instructing the jury on the elements of First Amendment retaliation claims; (2) whether the court abused its discretion by failing to appoint counsel before trial; and (3) whether punitive damages are available for First Amendment retaliation claims even in the absence of a physical injury. After careful review, we affirm.

**I.**

In October 2016, a federal jury returned a verdict against *pro se* plaintiff Carter on his claims of First Amendment retaliation against Warden Marty Allen and prison officers Rantavious Anderson, John Barber, and Tyler Westlake.

2

The evidence presented at trial showed the following. On March 27, 2014, Anderson conducted a random patdown search of Carter. After the search, Anderson sent Carter to administrative segregation. On April 1, Carter filed a grievance against Anderson for squeezing his buttocks in a sexually inappropriate manner during the patdown search. The next morning, Officers Anderson, Barber, Westlake, and Gregory Sealy conducted a shakedown of the dormitory where Carter was housed. During the shakedown of Carter's cell, Barber found a contraband cell phone encased in a bar of soap. Carter was charged with a disciplinary violation for possession of contraband. The violation was upheld, leading to a loss of privileges. A few months later, in July, Carter was transferred to segregation after he mentioned to Allen the prior grievance against Anderson and that he was uncomfortable being searched by Anderson.

In Carter's version of events, Anderson squeezed his buttocks inappropriately during the patdown search. When Carter objected and said he would file a grievance, Anderson got angry and sent him to segregation. While in segregation, Carter filed the grievance, which caused Anderson and other officers to target his dormitory for a shakedown. During the shakedown of Carter's cell, Westlake produced from his vest a bar of soap disguising a cell phone and handed it to Barber, stating that it was for filing the grievance against Anderson. Later, Anderson was conducting patdown searches of Carter's dormitory on Allen's orders. When Allen came around to

3

Carter's cell, Carter told Allen that he did not feel comfortable being searched by Anderson because he had previously filed a grievance against him. Allen "got angry" and placed him in segregation for insubordination.

In the defendants' version of events, Carter refused to allow Anderson to conduct the patdown search on March 27. As a result, Anderson forcibly pat searched Carter and then placed him in segregation for failure to comply with orders. Patdown searches involve checking the crotch area of prisoners, but Anderson did not touch Carter's buttocks other than to check his back pockets and did not touch Carter in a sexual manner. Further, according to the defendants, they did not know about the grievance at the time of the shakedown, and no officer planted a cell phone. Rather, they found the bar of soap and cell phone in a net bag that Carter was carrying as he was about to leave for the shower while they searched his cell. Regarding the July events, the defendants maintained that Carter was placed in administrative segregation for protection under its normal policies for handling allegations of sexual assault against a prison officer. The prison treated Carter's comments to Allen as a new allegation of sexual assault.

## II.

Carter initiated this civil-rights action *pro se* in January 2015. Soon after, he filed a motion for appointment of counsel, which a magistrate judge denied as premature. The magistrate judge had just ordered Carter to refile his complaint on

4

the standard 42 U.S.C. § 1983 form, and the judge explained that he could not, at that time, properly evaluate Carter's need for counsel. But the magistrate judge indicated that he would "entertain this motion again at the appropriate time."

After Carter filed his complaint on the proper form, the magistrate judge screened Carter's complaint and determined that his First Amendment retaliation claims could go forward against Warden Allen and Officers Anderson, Barber, Sealy, and Westlake. The district court adopted the magistrate judge's recommendation over Carter's objections. These defendants filed an answer and discovery began. The parties' filings indicate that Carter requested but did not receive surveillance footage of his cell on the date of the shakedown. The defendants said that no such video footage existed. After discovery, the defendants moved for summary judgment with supporting evidence, and Carter responded and submitted evidence in opposition.

A magistrate judge recommended that Carter's retaliation claims against two defendants—Barber and Westlake—proceed to trial but that summary judgment be granted as to the remaining defendants. Carter objected and successfully persuaded the district court to deny summary judgment to two additional defendants—Allen and Anderson. Thus, the court granted summary judgment in favor of Sealy only, and the remaining claims were set for trial.

5

A little more than a month before trial, Carter filed a motion to renew his initial request for appointment of counsel, citing his "lack of education and mental illness." In his initial motion, Plaintiff had requested appointment of counsel because (a) he could not afford counsel; (b) his imprisonment limited his ability to litigate, as he had limited access to a law library and limited knowledge of the law; (c) the issues in the case were complex; (d) a trial would involve conflicting testimony and would require skilled cross-examination; and (e) he was mentally ill—he suffered from major depressive disorder with psychotic features—and was taking medication to treat the illness. The defendants opposed appointment of counsel. Both Carter and the defendants also filed motions to exclude certain evidence and trial briefs.

The district court denied the motion for appointment of counsel at a pretrial hearing on October 14, 2016. The court asked Carter if he "want[ed] to speak to that motion." Carter said no, and the court then denied the motion without explanation.

A jury trial was held from October 24–26, 2016. Carter testified and called two witnesses in support of his version of events. Witnesses for the defense included Allen, Anderson, Barber, and Westlake. Carter cross-examined each of the witnesses, challenging specifically how a contraband cell phone could have been in his possession when he had just been transferred to segregation.

The district court instructed the jury on the elements of First Amendment retaliation, based on instructions submitted by the defendants. The court asked the jury first to find whether Carter engaged in constitutionally protected speech when he filed the grievance against Anderson on April 1, 2014. The six-person jury unanimously answered "No" to this question. So, as the verdict form instructed, the jury returned a verdict against Carter without addressing whether the defendants engaged in acts of retaliation or considering damages. The district court entered judgment on the verdict.

Carter then filed a motion for new trial based on the failure to appoint counsel. He argued that the lack of counsel prejudiced him at trial for several reasons: (a) he was mentally ill; (b) he had not graduated from high school or obtained his GED; (c) he did not have any legal experience; (d) the jury trial "turned largely [on] the credibility of Defendants and Defense witnesses," and (e) he needed someone to help him conduct "meaningful cross examination."

After the defendants responded in opposition, the district court denied the motion for new trial. The court explained its reasons as follows:

> The record belies Plaintiff's argument. At trial, Plaintiff appeared to be alert, focused, and able to comprehend the proceedings. Plaintiff testified on his own behalf, called several witnesses, and conducted direct and cross-examination. Although the trial did involve credibility issues, plaintiff effectively questioned witnesses and identified possible inconsistencies between their testimony and other evidence. Further, Plaintiff gave a closing argument to the jury and got the vast majority of his documents into evidence. Plaintiff was articulate in his

7

testimony, questioning, and argument.  The fact that the jury ultimately credited Defendants' version of events does not suggest that Plaintiff's performance was so deficient as to warrant the appointment of counsel and a retrial.

Carter timely appealed the judgment and the denial of his motion for new trial. We granted him leave to appeal *in forma pauperis* and appointed appellate counsel. Appointed counsel then filed a brief presenting the three issues set out above, relating to the jury instructions, appointment of counsel, and the availability of punitive damages.[1]  We take each issue in turn.

## III.

Ordinarily, we review the "legal correctness" of jury instructions *de novo* but review the "phrasing of the instructions for abuse of discretion."  *United States v. Focia*, 869 F.3d 1269, 1280 (11th Cir. 2017), *cert. denied*, (U.S. Jan. 7, 2019) (No. 18-6817).  To determine whether the court abused its discretion, "we examine the challenged instructions as part of the entire charge, in light of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues."  *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (quotation marks omitted).  Jury

---

[1] We are grateful to Anne Baroody, court-appointed counsel, for ably representing Carter in this appeal.

8

instructions challenged for the first time on appeal are reviewed for plain error. *United States v. Felts*, 579 F.3d 1341, 1343 (11th Cir. 2009).

To prevail on a claim of First Amendment retaliation, "the inmate must establish these elements:  (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  Only the first element is at issue here.

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  *Id.* at 1276.  But "an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's status as a prisoner or with the legitimate penological objectives of the corrections system."  *Id.* at 1277.  Therefore, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one."  *Id.* (quotation marks omitted).  In *Smith*, for example, we held that a prisoner's "false and insubordinate remarks" in a letter to an assistant warden, which were found to have violated two prison rules, "failed to establish the first element of a retaliation claim."  *Id.*

9

The instruction in this case, based on *Smith*, explained that prisoners retain the right to engage in free speech, including filing certain grievances, "so long as the speech does not violate legitimate prison rules."  It elaborated that

> prison inmates are engaged in protected speech when they legitimately complain to prison administrators about the conditions of their confinement, including filing prison grievances.  However, prison inmates are not engaged in protected speech when they make false statements, insubordinate remarks, or statements that violate reasonable prison rules.
>
> If you find that Plaintiff's grievance falsely alleged that Defendant Anderson touched him in an inappropriate sexual manner, you must find that Plaintiff's filing of the grievance was not constitutionally protected speech.  However, if you find that Plaintiff had a good faith basis for filing his grievance, you may find that he was engaged in protected speech.

Carter argues that it was wrong to give this instruction for three reasons.  First, he says that the issue of protected speech should not have been submitted to the jury at all because it is an issue of law.  Second, he asserts that the defendants effectively waived the issue because they conceded that the grievance was protected speech in their summary-judgment motion.  Third, he maintains that the instruction misstated the standard for protected speech.  These arguments were raised for the first time on appeal, so we normally would review for plain error only.  Whether the issues are forfeited or preserved, however, Carter is not entitled to relief.[2]

---

[2] Because Carter cites the alleged instruction errors as reasons why appointment of counsel was necessary, we consider the issues without the more restrictive lens of plain-error review.

First, the district court properly submitted the issue of protected speech to the jury. Carter is correct that it is a question of law whether, given a set of facts, a person has engaged in constitutionally protected speech. *Alves v. Bd. of Regents*, 804 F.3d 1149, 1159 (11th Cir. 2015). But where the underlying facts relevant to that legal determination are disputed, the matter is properly submitted to a jury to resolve those disputed facts. *Cf. Simmons*, 879 F.3d at 1164 ("Though entitlement to qualified immunity presents a question of law, resolution of this question can sometimes turn on issues of fact.").

The jury was not asked to resolve a question of law. In the instruction, the court explained that the legal question of whether the grievance was constitutionally protected essentially turned on the factual question of whether Carter had a good-faith basis for filing the grievance against Anderson. That dispute came down to issues of credibility and Carter's state of mind, which are matters for the jury. *Lowe v. Pate Stevedoring Co.*, 558 F.2d 769, 772 (5th Cir. 1977) ("It is the function of the jury to weigh conflicting evidence and inferences, and determine the credibility of the witnesses."); *see Prather v. Prather*, 650 F.2d 88, 90 (5th Cir. July 1981) ("When state of mind is a relevant issue, it is for the jury to determine what the state of mind

is.").[3]  It was, therefore, proper to ask a jury to resolve that dispute—assuming, of course, that the instruction accurately stated the law, which we address below.

Second, the defendants were not barred from arguing at trial that the grievance was not constitutionally protected.  Although the defendants, at summary judgment, did "not dispute that Plaintiff's filing of a grievance against Officer Anderson was a constitutionally protected act," they later made clear in their trial brief that they intended to contest that issue at trial.  It appears that Carter received a copy of this brief at the pretrial hearing.  Carter cites no authority holding that the defendants could not raise at trial an issue they did not dispute at summary judgment but included in their pretrial brief.

Finally, the jury was not misled as to the legal standard for protected speech.  Carter contends that it was improper to ask the jury to determine the truth or falsity of the grievance because, in his view, our decision in *Smith* held that prison grievances are constitutionally protected unless an inmate is found to have violated prison rules that are "reasonably related to legitimate penological interests."  Carter reads *Smith* too narrowly.

True, *Smith* held that the speech at issue in that case was not protected because it violated "valid limitations on inmate speech."  *Smith*, 532 F.3d at 1277.  But it also

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

broadly stated that "an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.*

We apply this same standard whether we are dealing with an action or a regulation. *See id.*; *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). And here, affording protection to a prisoner's false allegation of sexual assault against a prison officer for conducting a standard patdown search would be inconsistent with "the legitimate penological objectives of the corrections system." *Smith*, 532 F.3d at 1277; *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (frivolous grievances are not constitutionally protected); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) ("Prisons have an interest in keeping the inmates as safe and secure as possible while imprisoned, and ***truthful*** speech that describes possible abuses can actually be quite consistent with that objective." (emphasis added)); *cf. Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("[F]alse statements are not immunized by the First Amendment right to freedom of speech.").

Although, as Carter argues, the First Amendment requires protection of some falsehood to ensure that the freedom of speech receives "'breathing space' essential to [its] fruitful exercise," *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)), the court's instruction here provided such "breathing space" protection. The court told the jury

that it could find that the grievance was constitutionally protected if Carter "had a good faith basis for filing his grievance."  In contrasting "good faith basis" with "falsely alleged," the instruction properly focused the jury's attention on Carter's motives in filing the grievance—to make a legitimate complaint or to harass or retaliate—and not its truth or falsity as a purely factual matter.  *Cf. New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Although the language of the charge is not flawless, we conclude that it was legally accurate and that the jury understood the issues and was not misled.  *See Simmons*, 879 F.3d at 1162.  Accordingly, Carter has not established instructional error.

## IV.

Carter next argues that the district court should have appointed counsel before trial or at least explained its reasons for denying appointment of counsel.  We review the denial of motions for appointment of counsel for an abuse of discretion.  *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999).  "We will find an abuse of discretion only when a decision is in clear error, the district court applied an incorrect legal standard or followed improper procedures, or when neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review."  *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012).

"A plaintiff in a civil case has no constitutional right to counsel." *Bass*, 170 F.3d at 1320. While a court may appoint counsel for an indigent plaintiff, "[t]he district court has broad discretion in making this decision and should appoint counsel only in exceptional circumstances," *id.*, (citations omitted), such as "where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner," *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987).

In determining whether exceptional circumstances warrant appointment of counsel, the district court may consider various factors, including (1) the type and complexity of the case, (2) whether the indigent is capable of adequately presenting his case, (3) whether the indigent is in a position to adequately investigate the case, and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (cited with approval in *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990)). "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).

Carter first argues that the district court abused its discretion because its unexplained denial of his pretrial motion for appointment of counsel is insufficient to permit meaningful appellate review. *See Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996) (stating that courts must give "reasoned consideration" to a *pro se*

15

litigant's request for counsel and ordinarily must explain its ruling enough to show that it has exercised its "informed discretion").

We, however, find that the record provides sufficient explanation to enable meaningful review. *See Friends of the Everglades*, 678 F.3d at 1201. At the time Carter renewed his motion for appointment of counsel, the district court was well aware of Carter's active involvement in the litigation, which demonstrated that he was capable of adequately presenting his case. *See Ulmer*, 691 F.2d at 213. He had filed coherent pleadings, obtained extensions of time, sought and obtained discovery, timely responded to rulings by the district court, successfully defended against a summary-judgment motion, filed a motion to exclude certain evidence at trial, and filed a pretrial brief. Further, the court knew that Carter's claims were relatively straightforward and "involved incidents which took place in the prison, most of which plaintiff witnessed himself." *Fowler*, 899 F.2d at 1096. And the defendants had filed a response in opposition with detailed arguments against appointment of counsel. On this record, it was not an abuse of discretion for the court to deny the motion for appointment of counsel without further explanation.

Nor has Carter established exceptional circumstances warranting appointment of counsel before trial.[4] Carter's active and competent advocacy on his own behalf,

---

[4] As Carter proposes, we limit our review to the facts known to the district court at the time it ruled on the pretrial motion for appointment of counsel. *See Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982) ("Because the issue here is whether counsel should have been appointed prior to

16

as summarized in the preceding paragraph, strongly indicated that he was able to present adequately the "essential merits" of his case. *See Kilgo*, 983 F.2d at 193. Plus, the issues were relatively straightforward and based on incidents personally experienced by Carter. *See Fowler*, 899 F.2d at 1096. Although other factors suggest that appointment of counsel may have been appropriate, *see Ulmer*, 691 F.2d at 213, "the abuse of discretion standard allows a range of choice for the district court, so long as that choice here does not constitute a clear error of judgment," *Rasbury v. I.R.S. (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994) (quotation marks omitted). Even if we might have decided the matter differently had it been our call to make, we cannot say that the district court's choice constitutes a clear error of judgment. *See id.*

Carter points to several aspects of the proceedings during which he would have benefited from representation by counsel, including shaping jury instructions, participating in jury selection, conducting discovery, and engaging in cross-examination. However, while "[t]he plaintiff[], like any other litigant[], undoubtedly would have been helped by the assistance of a lawyer, . . . [his] case is not so unusual that the district court abused its discretion by refusing to appoint counsel." *Bass*, 170 F.3d at 1320.

---

trial, based on the facts known then to the district court, we are precluded in answering that question from using the hindsight gained by observing [the plaintiff's] actual performance.").

17

Finally, we note that Carter does not argue that the district court abused its discretion by denying his motion for new trial based on the failure to appoint counsel. We therefore deem this issue abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not raised on appeal are abandoned).

## V.

Carter's argument that the district court should have permitted him to pursue punitive damages is foreclosed by Circuit precedent. We have held that the Prison Litigation Reform Act prevents a prisoner from seeking punitive damages in the absence of a physical injury. *Al-Amin v. Smith*, 637 F.3d 1192, 1198–99 (11th Cir. 2011); *see* 42 U.S.C. § 1997e(e). This prohibition applies "equally to all constitutional claims," including "those rarely accompanied by physical injury (*e.g.*, First Amendment violations)." *Al-Amin*, 637 F.3d at 1197; *see Harris v. Garner*, 216 F.3d 970, 984–85 (11th Cir. 2000) (*en banc*). Accordingly, the district court correctly concluded that punitive damages were not available to Carter, who did not allege any physical injury.

## VI.

For the reasons stated, we affirm the judgment against Carter.

**AFFIRMED.**

18