ROBRENO, District Judge: Dontrell Stephens was shot four times by Deputy Sheriff Adams Lin during an encounter in West Palm Beach, Florida, on September 13, 2013. As a result, Stephens now suffers from permanent paralysis. In an action brought against Deputy Lin as an individual and Sheriff Ric Bradshaw in his official capacity as the sheriff of Palm Beach County, the district court granted summary judgment in favor of Sheriff Bradshaw on the claim against him for Monell liability. Following a trial that lasted from January 25, 2016, until February 4, 2016, a jury awarded Stephens damages totaling $23,148,100, The parties have cross appealed the district court’s rulings on various motions decided both before and after the trial. We affirm the district court’s grant of summary judgment in favor of Sheriff Bradshaw on the Monell claim brought against him, but we remand for a new trial upon finding that an erroneous jury instruction deprived Deputy Lin of the opportunity to have his claimed defense of qualified immunity considered by the district court. I. Most of the facts giving rise to this case are hotly disputed. The parties agree that, on September 13, 2013, shortly after 8:00 a.m., Deputy Lin, who was on police duty monitoring traffic during school bus pickups, observed Stephens, who was then twenty years old, riding his bike on the wrong side of a road in Palm Beach County, Florida. Deputy Lin then decided to stop Stephens, for reasons that the parties dispute. Stephens claims that, prior to this stop, he was holding a cellphone to his ear while riding his bicycle. Deputy Lin claims that he never saw the cellphone, and believed instead that Stephens’ hands were empty. Upon hearing the sirens of Deputy Lin’s patrol car, Stephens dismounted from his bicycle. Deputy Lin then instructed Stephens to walk toward him while showing his hands. According to Deputy Lin, Stephens turned away from Deputy Lin as he began walking toward him. As soon as Stephens turned away, Deputy Lin shot him four times. Stephens was rendered a paraplegic by his injuries. Stephens’ lawsuit against Deputy Lin and Sheriff Bradshaw arrived at the United States District Court for the Southern District of Florida in the spring of 2014 after removal from state court.[1] Stephens’ six-count amended complaint in federal court alleged various violations of 42 U.S.C. § 1983 and state law, including an excessive force claim against Deputy Lin and a Monell liability claim against Sheriff Bradshaw. After discovery was complete, Stephens and each defendant filed separate motions for summary judgment. The district court heard oral argument on all three summary judgment motions, and at that hearing, Stephens agreed to dismiss two of his state law claims against Sheriff Bradshaw. The district court then granted summary judgment in favor of Deputy Lin as to the constitutionality of the stop, and additionally granted summary judgment in favor of Sheriff Bradshaw as to the entire Monell claim against him. The summary judgment motions were denied in all other respects. See Simmons v. Bradshaw, No. 14-80425, 2014 WL 11456548, at *1 (S.D. Fla. Dec. 31, 2014). Following the district court’s denial of summary judgment on grounds of qualified immunity, Deputy Lin filed a timely notice of interlocutory appeal. A panel of this Court affirmed, agreeing with the district court that a reasonable jury could find that Deputy Lin violated Stephens’ clearly established constitutional rights by employing excessive force, and further that the allegedly violated right was clearly established by governing case law. See Stephens v. Lin, 612 Fed.Appx. 581, 582 (11th Cir. 2015) (per curiam). On remand, Stephens sought reconsideration of the interlocutory Monell ruling. In support of his motion for reconsideration, Stephens attached as evidence deposition testimony and expert reports from several other excessive force lawsuits brought against the Palm Beach Sheriffs Office (“PBSO”) and its officers. Although the district court held a lengthy hearing on the motion for reconsideration, it ultimately denied the motion without written explanation. On January 25, 2016, the matter proceeded to trial on the two counts that remained: a § 1983 excessive force claim against Deputy Lin, and a state law battery claim against Sheriff Bradshaw.[2] On February 3, 2016, the jury returned its verdict, finding that “Adams Lin’s intentional use of force against Dontrell Stephens was excessive or unreasonable.” The jury also found that Stephens suffered severe and permanent injuries as a result of Deputy Lin’s use of force, and it awarded damages totaling $23,148,100. Pursuant to the jury’s verdict, the Court entered final judgment for Stephens and against Deputy Lin and Sheriff Bradshaw, jointly and severally, in the amount of $22,431,892.05. Each of the parties timely filed a notice of appeal. Stephens challenges the pre-trial grant of summary judgment dismissing Stephens’ multifaceted Monell claim against Sheriff Bradshaw. Deputy Lin challenges the post-trial denial of his motion for a new trial based on two particular jury instructions he contends were erroneous, including one pertaining to his claimed defense of qualified immunity.[3] II. Rule 59(a) of the Federal Rules of Civil Procedure allows a court to grant a new trial “on all or some of the issues.” Fed. R. Civ. P. 59(a). A motion for a new trial may be brought on “various grounds, including[ ] erroneous jury instructions.” Tierney v. Black Bros. Co., 852 F.Supp. 994, 1003 (M.D. Fla. 1994) (citing Stuckey v. N. Propane Gas Co., 874 F.2d 1563, 1571 (11th Cir. 1989)). “Motions for new trial on the basis 5f erroneous and prejudicial jury instructions are within the district court’s discretion and are reviewed for abuse of discretion.” Gowski v. Peake, 682 F.3d 1299, 1310 (11th Cir. 2012) (citing Pate v. Seaboard R.R., Inc., 819 F.2d 1074, 1077 (11th Cir. 1987)). To determine whether the court below abused its discretion, “we examine the challenged instructions as part of the entire charge, in light of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues.” Pate, 819 F.2d at 1077. ■ Iri conducting this examination, we review jury instructions de novo “to determine whether they misstate the law or mislead the jury.” Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228, 1233 (11th Cir. 2004) (quoting Palmer v. Bd. of Regents of the Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000)). If the instructions do not accurately reflect the law and “do not correctly instruct the jury so that we are ‘left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,’ ” then “we will reverse and' ordér a new trial.” Broaddus v. Fla. Power Corp., 145 F.3d 1283, 1288 (11th Cir. 1998) (quoting Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997)). We review a grant of summary judgment de novo, applying the same standard as the court below. See Southern Waste Sys., LLC v. City of Delray Beach, 420 F.3d 1288, 1290 (11th Cir. 2005) (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001)). III. A government official faced with a civil rights claim brought pursuant to 42 U.S.C. § 1983 is entitled to raise the affirmative defense of qualified immunity. Qualified immunity generally shields government officials from liability for civil damages “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Recognition of qualified immunity “reflect[s] an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also ‘the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.’ ” Id. at 807, 102 S.Ct. 2727 (citation omitted) (quoting Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Qualified immunity is “an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.” Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (“Immunity ordinarily should be decided by the court long before trial.”); see also Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002) (“Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage of the litigation.”). It “follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct” that this defense is “conceptually distinct from the merits of the plaintiffs claim, that his rights have been violated.” Mitchell, 472 U.S. at 527-28, 105 S.Ct. 2806. Entitlement to qualified immunity is for the eourt to decide as a matter of law. Specifically, a court considering a defendant’s claim of qualified immunity must address the following question of law: [W]hether the legal norms allegedly violated by the defendant were clearly established at thé time of the challenged actions or, in cases where the distinct court has denied summary judgment for the defendant on the ground that even under the defendant’s version of the facts the defendant’s conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took. Mitchell, 472 U.S. at 528, 105 S.Ct. 2806; see also Harlow, 457 U.S. at 818, 102 S.Ct. 2727 (“[T]he judge appropriately may determine, not only the currently applicable law, but whether that law:,was clearly established at the time an action occurred.”); Cottrell v. Caldwell, 85 F.3d 1480, 1488 (11th Cir. 1996) (“Qualified immunity is a legal issue to be decided by the court....”); Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992) (“The law is now clear ... that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury.”); Hudgins v. City of Ashbum, 890 F.2d 396, 403 (11th Cir. 1989) (“[T]he availability of qualified immunity necessarily is a question of law.”). Though entitlement to qualified immunity presents a question of law, resolution- of this question can sometimes turn on issues of fact. We have previously explained why and under what circumstances a defendant’s entitlement to qualified immunity may remain unresolved even into the trial phase of litigation: Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will, proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability, and the burden of further litigation. Even'at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it. The ones who should be given that protection at the summary judgment stage are those who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity. And that will include defendants in a case where there is some dispute about the facts, but even viewing the evidence most favorably to the plaintiff the law applicable to that set of facts was not already clearly enough settled to make the defendants’ conduct clearly unlawful. But if, the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial. Johnson, 280 F.3d at 1317 (emphasis added) (citation omitted); see also Vaughan v. Cox, 343 F.3d 1323, 1333 (11th Cir. 2003) (“But [the defendant] is not foreclosed from asserting a qualified immunity defense at trial. If the jury were to accept [the defendant’s] version of the facts, the qualified immunity analysis would be changed.”). If a government official moves for summary judgment asserting entitlement to qualified immunity, then the relevant facts are construed in the light most favorable to the non-movant—ie., the plaintiff—and the court should decide the issue based on those facts. See Mitchell, 472 U.S. at 526, 105 S.Ct. 2806 (“Even if the plaintiff’s complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.”). If the official’s motion does not succeed, however, then his qualified immunity defense remains intact and proceeds to trial. The facts as viewed for summary judgment purposes are no longer binding, and the jury proceeds to find the relevant facts bearing on qualified immunity. See id. at 527, 105 S.Ct. 2806 (“At trial, the plaintiff may not" succeed in proving his version of the facts, and the defendant may thus escape liability.”); Johnson, 280 F.3d at 1318 (“When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense....”); Cottrell, 85 F.3d at 1487 (“[A] defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law.” (alteration in original) (quoting Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir. 1994))). At trial, the court uses the jury’s factual findings to render its ultimate legal determination as to whether it would be evident to a reasonable officer, in light of clearly established law, that his conduct was unlawful in the situation he confronted: Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and- in those situations courts will not hold that they have violated the Constitution. Yet, •even if a court were to hold that the officer violated the [Constitution] ..., [Supreme Court precedent] still operates to grant officers immunity for reasonable mistakes as to the- legality of their actions. Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In other words, the question of what circumstances existed at the time of the encounter is a question of fact for. the jury—but the question of whether the officer’s perceptions and attendant actions were objectively reasonable under those circumstances is a question of law for the court. See id.; see also Harris v. Coweta Cty., 21 F.3d 388, 390 (11th Cir. 1994) (questions of “whether the law allegedly violated was clearly established at the time of the complained-about conduct” and “whether the official’s conduct was objectively reasonable in light of the information known, to thé official at the time” are “objective, albeit fact-specific, inquiries which we undertake as questions of law” (citation omitted) (citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and Mitchell, 472 U.S. at 526-28 & n.9, 105 S.Ct. 2806)). “Where the defendant’s pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues.” Cottrell, 85 F.3d at 1487. As we have said before: Because a public official who is put to trial is entitled , to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted. Denial of such a request would be error, because it would deprive the defendant who is forced to trial of his right to have the factual ■ issues underlying his defense decided by the jury. We do not mean to imply, of course, that district courts should submit the issue of whether a defendant is entitled to qualified immunity to the jury. Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term. Instead, the jury interrogatories should be restncted to the who-what-when-where-ivhy type of historical fact issues. When a district court has denied the qualified immunity defense prior to trial based upon its determination that the defense turns upon a genuine issue of material fact, the court should revisit that factual issue when, and if, the defendant files a timely Fed. R. Civ. P. 50(a) or (b) motion. Id. at 1487-88 (emphases added) (citations omitted).[4] The facts of the instant case involved contested factual issues bearing on Defendant’s entitlement to qualified immunity. In its order disposing of the parties’ motions for summary judgment, the district court expressly reserved the qualified immunity question for later determination: If it were to credit Stephens’ account of these events, a reasonable jury clearly could find that Deputy Lin violated his constitutional rights by employing excessive force. Yet, Deputy Lin would still be entitled to qualified immunity if the law were not clearly established. Saucier, 533 U.S. at 201, 121 S.Ct. 2151 (stating that if a constitutional right would have been violated under the plaintiffs version of the facts, the court must then determine whether the right was clearly established). [[Image here]] Even though this Court has concluded that Deputy Lin is not entitled to qualified immunity on Stephens’ excessive force claim at the summary judgment stage, Deputy Lin is not precluded from pursuing the qualified immunity defense at the trial. See Vaughan v. Cox, 343 F.3d 1323, 1333 (11th Cir. 2003). Should the jury choose not to credit (in whole or in part) Stephens’ version of the facts, or should the facts not be presented at trial as alleged here on summary judgment, the qualified immunity analysis may change. Simmons v. Bradshaw, No. 14-80425, 2014 WL 11456548, at *8-9 (S.D. Fla. Dec. 31, 2014). Rather than submitting the contested factual issues—ie,, the historical facts—to the jury at trial, however, the Court opted to give the following instruction: Whether a specific use of force is excessive or unreasonable depends on factors such as the nature of any offense involved, whether a citizen poses an immediate violent threat to others, including the police officer, and whether the citizen resists or flees. In assessing these factors, you should consider whether an officer’s belief that a citizen is posing an immediate violent threat is an objectively reasonable belief under the circumstances, notwithstanding that it is a mistaken belief. Where an officer’s mistaken belief that a citizen poses an immediate and deadly threat is objectively reasonable under the circumstances,- then that officer’s use of deadly force is not excessive or unreasonable. On the other hand, where an officer’s mistaken belief that a citizen poses an immediate and deadly threat is not objectively reasonable.under the circumstances, then that officer’s use of deadly force is excessive or unrea.sonable. This instruction is problematic not only because it is an incorrect statement of the law, but moreover because it effectively delegated resolution of the issue of qualified immunity to the jury—presumably as to both facts and Jaw—and thus the. district court never decided whether Deputy Lin was entitled to his claimed defense of qualified immunity.[5] Consistent with Supreme Court precedent, we have noted that the factual issues bearing on the excessive .force inquiry are distinct from the legal issues bearing on a defendant’s entitlement to qualified immunity: It makes perfect sense to conclude, as the Supreme Court did in Saucier, that with such claims the merits issue and the qualified immunity issue are distinct, so that the existence of a valid Fourth Amendment excessive force claim is not inconsistent with qualified immunity. In other words, a defendant officer could use force in making an arrest that is later judged to be excessive enough that it violates the Fourth Amendment, but if prior decisions did not clearly establish that the use of that amount of force in those circumstances was constitutionally excessive, the defendant officer would be entitled to qualified immunity. Johnson, 280 F.3d at 1321. In this case, ■however, the excessive force inquiry was not sufficiently divorced from the qualified immunity inquiry in that -the instruction improperly conflated the two inquiries and presented the jury with both together. The jury was thus essentially forced to find either that Deputy Lin used excessive force and therefore was not entitled to qualified immunity, or that Deputy Lin did not use excessive force at all.[6] This instruction was erroneous for two reasons. First, it is not the province of the jury to decide a defendant’s entitlement to qualified immunity. See Cottrell, 85 F.3d at 1488 (“We do not mean to imply, of course, that district courts should submit the issue of whether a defendant is entitled to qualified immunity to the jury. Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories- should not even mention the term.”); Stone, 968 F.2d at 1166 (“The law is now clear ... that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury.”). Second, there was no room for the jury to find that Deputy Lin used excessive force and also the.district court to decide that he was entitled to qualified immunity. See Johnson, 280 F.3d at 1321 (“[T]he existence of a valid Fourth Amendment excessive force claim is not inconsistent with qualified immunity.”); Saucier, 533 U.S. at 197, 121 S.Ct. 2151 (“[T]he ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used.... ”); Mitchell, 472 U.S. at 527-28, 105 S.Ct. 2806 (“[I]t follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiffs claim that his rights have been violated.”). Evidently, the district court believed that the jury instruction at issue properly covered both excessive force and qualified immunity. In its order denying in' part the defendants’ motion for a new trial, the district court stated that, “[i]n light of the jury instructions given in this case—which the jury is presumed to have understood and followed—the jury’s verdict reflects an implicit finding that Deputy Lin did not commit an objectively reasonáble mistake when he shot Dontrell Stephens.” Simmons v. Bradshaw, No. 14-80425, 2016 WL 4718409, at *1 (S.D. Fla. Apr. 18, 2016). This “implicit finding” recognized by the district court, however, does not necessarily answer the qualified immunity question, which must be- considered and resolved by the court as a legal issue. See Saucier, 533 U.S. at 205, 121 S.Ct. 2151 (“An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.”). Because of these errors, Deputy Lin was not afforded the opportunity to have his claimed defense of qualified immunity determined by the court, as he was entitled to have. Furthermore, the errors were not harmless because this is not a case in which “the jury verdict itself, viewed in the light of the jury instructions, and any interrogatories that were answered by the jury, indicate without doubt what the answers to the refused interrogatories would have been, or make the answers to the refused interrogatories irrelevant to the qualified immunity defense.” Johnson, 280 F.3d at 1318, Because the jury instructions did not accurately reflect the law, and" moreover because Deputy Lin was improperly deprived of the opportunity to have his defense of qualified immunity considered by the district court, it was an abuse of discretion for the district court to have denied Deputy Lin’s motion for a new trial. See Gowski, 682 F.3d at 1310. Accordingly, we will reverse and order a new trial. See Broaddus, 145 F.3d at 1288.[7] IV. With respect to Stephens’ Monell claim, the district court made thorough factual findings' supporting its grant of summary-judgment in favor of Sheriff Bradshaw and against Stephens. These findings included the following: (1) “Stephens ... has failed to demonstrate prior constitutional violations with respect to PBSO officer-involved shootings,” Simmons, 2014 WL 11456548 at *12; (2) “Stephens has not shown ongoing constitutional violations or even meritorious complaints regarding officer-involved shootings that Sheriff Bradshaw simply ignored,” and “the record shows that Deputy Lin never had a complaint, let alone a meritorious complaint, regarding the use of deadly force” id. at *15; (3) “Beyond alleging deficiencies in the investigation of his own shooting, Stephens has not produced any evidence showing that PBSO’s investigative and disciplinary procedures were generally deficient,” and “he has not identified any prior constitutional violation that went unpunished,” id. at *16; ' (4) “[Djespite the failure of PBSO investigators to interview Stephens, the shooting was nonetheless reviewed by PBSO Internal Affairs and by its violent crimes personnel, and it was then separately investigated by the State Attorney’s Office,” id. at *18; and (5) “[Njeither Sheriffi ] Bradshaw’s statement in defense of Deputy Lin nor the subsequent investigation of the shooting can support Stephens’ ratification theory of liability, as neither occurred before the shooting and neither could have been the cause of the injury,” id. at *19. In making these findings, the district court noted- correctly that “[settlement agreements ... are not competent evidence that Sheriff Bradshaw condoned the actual use of excessive force,” id. at *12 n.12, and carefully analyzed memoranda from the State Attorney’s Office “providing] critical context for—and rebut[ting]—Stephens’ suggestion that Sheriff Bradshaw’s defenses of his deputies’ actions were unjustified,” id. at *11. The district court also noted that “the Stephens shooting was the first time that Deputy Lin had ever fired his weapon in the line of duty,” id. at *15, and further that “Deputy Lin testified that he understood that Sheriff Bradshaw holds him and other deputies acco'untable for their actions,” id. at *10. As the district court seems to have implicitly observed, the most difficult hurdle for Stephens to mount in order to succeed on his Monell claim against Sheriff Bradshaw is causation. The only causation argument Stephens offers is that “Sheriff Bradshaw’s routine and uncritical ratification of his deputies’ prior use of force ‘was causally connected’ to Lin’s shooting of Stephens, because it. sent a message to Lin and his deputies that allegations of excessive force would not be investigated.” Appellant’s Br. at 54. Even accepting arguendo that Sheriff Bradshaw “routinely and" uncritically” ratified his deputies’ use of force, it is difficult to understand how anything Sheriff Bradshaw allegedly did (or failed to do) could have been the “moving force of the constitutional violation” in this case. See Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Without competent evidence establishing a pattern or practice of constitutional violations, Stephens’ shooting must be evaluated as a single incident. Even assuming that Stephens’ shooting was unconstitutional, this incident alone does not establish a custom of tolerating excessive force. See Salvato v. Miley, 790 F.3d 1286, 1296 (11th Cir. 2015) (“[T]he failure to investigate a single incident, of which the sheriff was unaware until after-the-fact, cannot ratify a constitutional violation.”); see also Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001), cert, granted, judgment vacated sub nom. Thomas v. Roberts, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 829 (2002), opinion reinstated, 323 F.3d 950 (11th Cir. 2003) (“[W]hen plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate’s decision and agreed with both the decision and the decision’s basis before a court can hold the government liable on a ratification theory.”). On a broader scale, the Supreme Court has made clear that the' bar to establish municipal liability is very high. See, e.g., Connick v. Thompson, 563 U.S. 51, 70, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (“[Pjroving that a municipality itself actually caused a constitutional violation' .., presents ‘difficult problems of proof,’ and we must adhere to a ‘stringent standard of fault,’ lest municipal liability under § 1983 collapse into respondeat superior.” (quoting Bd. of Cty. Comm’rs of Bryan Cty. v. Brown, 520 U.S. 397, 406, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997))). Whether or not this high bar is advisable as a general policy matter is one question, but whether or not the district court erred in its evaluation of all pertinent evidence under binding legal precedent is another. We answer this latter question—the only one before tliis Court—in the negative and thus affirm the district court’s grant of summary judgment in favor of Sheriff Bradshaw on Stephens’ Monell claim against him in this case. IV. For the foregoing reasons, the judgment below is AFFIRMED in part and VACATED in part, and the case is hereby REMANDED for a new trial. . Stephens' counsel, Evett Simmons, Esquire, served as a co-plaintiff in this case in her capaciiy as guardian of the property of Dont-rell Stephens. For the sake of simplicity, we refer throughout this opinion only to "Stephens,” rather than to "Plaintiffs" collectively- . The parties stipulated, and the district court ordered, that if the jury found that Deputy Lin had committed a battery, then Sheriff Bradshaw would be held vicariously liable. We refer throughout this opinion to "Deputy Lin” and "Sheriff Bradshaw” individually, as each pertinent issue and defense pertains to these defendants separately. . Deputy Lin also appeals the district court’s denial of his request for a jury instruction that an officer’s actions must be viewed from tpe perspective of a reasonable officer on the scene, and not with 20/20 hindsight vision. The instruction given at trial stated that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene.” We find no merit in Deputy Lin’s argument that he was prejudiced because this instruction did not include the phrasé "rather than with the 20/20 vision of hindsight.” . It is not always necessary to follow this procedure, because the failure to give requested jury interrogatories may not be error, or [the] error may be harmless, where the jury verdict itself, viewed in the light of the jury instructions, and any interrogatories that were answered by the jury, indicate without doubt what the answers to the refused interrogatories would have been, or make the answers to the refused interrogatories irrelevant to the qualified immunity defense. Johnson, 280 F.3d at 1318. But "[i]n a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court.” Id. . Throughout trial proceedings, defense counsel repeatedly objected to the district court’s handling of the qualified immunity question, thereby preserving the issue for appeal.. See Defs.’ Cross Reply Br. at 3 (citing numerous ' instances on the record where "defense counsel stated and re-stated the defense’s objection to the proposal offered by the trial court in regard to how to address the qualified immunity issue in this case”). We find that Deputy Lin "made [his] position clear to the court previously and further objection would [have been] futile,” and further that consideration of this issue "is necessary to ‘correct a fundamental error or prevent a miscarriage of justice.’ ” Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999) (quoting Landsman Packing Co., Inc. v. Cont'l Can Co., Inc., 864 F.2d 721, 726 (11th Cir. 1989)). . The district court denied Deputy Lin’s request for a special interrogatory designed to address the factual component of his qualified immunity defense, apparently out of concern that creating too much space between the excessive force and qualified immunity inquiries could lead to inconsistent verdicts. This concern was unfounded, however, because finding excessive force does not preclude entitlement to qualified immunity. See Anderson, 483 U.S. at 643, 107 S.Ct. 3034 (expressly rejecting argument that "[i]t is not possible ... to say that one ‘reasonably’ acted unreasonably”); see also Long v. Slaton, 508 F.3d 576, 583-84 (11th Cir. 2007) ("Even if [the defendant's] use of deadly force was excessive under the Fourth Amendment, we conclude alternatively that [the] [defendants are entitled to qualified immunity because they, especially given the circumstances, Violated no clearly established right.”). . Had the jury been afforded the opportunity to make specific factual findings relevant to the qualified immunity inquiry—including, for example, whether Stephens had committed a traffic infraction on his bicycle; whether Stephens dismounted from his bicycle and complied with Deputy Lin’s commands following the stop; and whether Stephens possessed any weapons, threatened Deputy Lin, or attempted to flee—the district court could (and should) have then determined, as a matter of law, “whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.” Mitchell, 472 U.S, at 528, 105 S.Ct. 2806.