[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17560
_____

D.C. Docket No. 3:15-cv-01184-TJC-JBT

R.F.J.,
Estate of deceased minor child,
R.F.,
Estate of deceased minor child,
J.F.,
Estate of deceased minor child,
BRIAN CABREY,
attorney ad litem and next friend of H.F., a minor child,
RICHARD FOWLER,
individually, et al.,

Plaintiffs - Appellees,

versus


FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,
a governmental agency of the State of Florida,

Defendant,

BRUCE PERRY,
REGINALD BRADY,
Individually,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 7, 2018)

Before JORDAN and ROSENBAUM, Circuit Judges, and MARTINEZ,[*] District Judge.

PER CURIAM:

Defendants Bruce Perry and Reginald Brady appeal the district court's conversion of their motions to dismiss on qualified-immunity grounds to motions for summary judgment. They also appeal the district court's deferral of ruling upon those motions until after the parties complete discovery. For the reasons that follow, we vacate the district court's order deferring its ruling on Brady's and Perry's motions for qualified immunity and remand for further proceedings.

# I.[1]

On June 17, 2014, as part of his official duties, Defendant-Appellant Reginald Brady, a Child Protective Investigator with Defendant-Appellant Florida Department of Children and Families ("DCF"), arrived at the Jacksonville, Florida, home where Sheila Swearingen was staying with her four grandchildren. He found

_____

[*] Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

[1] For purposes of our review, we accept as true the allegations in the operative complaint and construe them in the light most favorable to the plaintiff, since Brady and Perry challenge the district court's failure to rule on their motion to dismiss. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016).

it in flames.  Worse, R.F.J., R.F., J.F., and H.F.—four siblings between the ages of ten months and six years—along with Swearingen—were in the house when it caught fire.  Tragically, three of those children, R.F.J., R.F., and J.F. perished in the fire alongside Swearingen.  The fourth sibling, H.F., narrowly escaped but suffered serious injuries.

DCF's role in how the children came to be with Swearingen lies at the heart of this lawsuit, so we take a moment to explain.  Earlier that day, Brady—without first confirming that the home at which Swearingen was staying would be a safe environment for the children—had advised Swearingen that she could take temporary custody of her grandchildren from the grandchildren's grandfather, Clayton Woods.  Woods, in turn, had had temporary custody of the grandchildren because both Jennifer Smith and Richard Fowler, the children's parents, were in jail at the time.

Between Brady's authorization of Swearingen's temporary custody on the morning of June 17 and Brady's visit later that day to where Swearingen was staying, Brady attended a DCF meeting, along with his supervisor, Defendant-Appellant Child Protective Investigator Supervisor Bruce Perry, and other DCF staff at about 1:45 p.m.  During this meeting, Defendants discussed the fact that Swearingen had been convicted years earlier of having sex with a minor and that

3

she was a registered sex offender in the State of Florida. Nevertheless, Defendants continued to allow the children to remain in temporary custody with Swearingen.

As it turns out, the publicly available criminal records concerning Swearingen's conviction revealed that she was adjudicated not guilty by reason of insanity after she violated her sex-offender probation. And Swearingen's publicly available criminal-case file contained two letters that noted Swearingen's history of treatment for schizophrenia, undifferentiated type. Among other remarks, these letters stated that Swearingen had "a long history of emotional disturbance and [was then] under care for treatment of Schizophrenic Disorder with anti-psychotic medication to control side effects."

Returning to the events of June 17, after the DCF meeting and before the fire occurred, Swearingen tried to contact Brady twice on his cell phone. Later, at roughly 5:40 p.m., R.F.J., who was four years old at the time, was playing with a lighter and started the house fire. Brady showed up at the residence an hour and forty-five minutes after that and discovered the fire. By that point, it was too late to help R.F.J., R.F., J.F., and Swearingen, and H.F. had suffered injuries before she could escape the fire.

## II.

Based on these events, Plaintiffs—the estates of R.F.J., R.F., and J.F., along with H.F. and the children's father (together, "Plaintiffs")—filed suit against DCF,

4

Brady, and Perry. Plaintiffs assert claims pursuant to 42 U.S.C. § 1983, the Florida Wrongful Death Act, and Florida common law. With respect to their § 1983 claim, Plaintiffs allege that each child had a "cognizable liberty interest under the Fourteenth Amendment to be free from unnecessary pain." Plaintiffs aver that Brady and Perry were indifferent to those rights because they knew it was too risky to put the children with Swearingen, but they did it, anyway. In addition, Plaintiffs contend that Brady and Perry had a constitutional duty to prevent harm to the children by placing them with a responsible adult.

After Plaintiffs filed an amended complaint, Perry and Brady separately moved to dismiss the claims against them on the basis of qualified immunity. In response, Plaintiffs filed their Second Amended Complaint. Perry and Brady again separately moved to dismiss, contending that qualified immunity shielded them from Plaintiffs' suit.

On April 6, 2016, the district court referred Brady's and Perry's motions to a magistrate judge for a Report and Recommendation. The magistrate judge recommended finding that Brady and Perry are entitled to qualified immunity.

Both sides filed objections to the Report and Recommendation, and the district court conducted a hearing. At the hearing, Plaintiffs made a number of factual assertions that were absent from the Second Amended Complaint. Some appeared to be material. For example, Plaintiffs asserted that DCF had interviewed

5

Swearingen at some point before placing the children with her. Plaintiffs also claimed that DCF's placement of the children with Swearingen went against the parents' instructions because the parents believed she was incapable of caring for them. The court ended the hearing by directing the parties to engage in settlement discussions.

Those talks quickly faltered. The district court subsequently converted Brady's and Perry's motions to dismiss into motions for summary judgment. But the court did not rule on the motions. Instead, it directed the parties to commence discovery so that the court could have a full record before deciding whether Brady or Perry, or both, are entitled to qualified immunity.

Perry and Brady now appeal that ruling. In the meantime, while this appeal has been pending, Plaintiffs—armed with new facts gleaned from discovery—sought leave to file a Third Amended Complaint. The district court deferred ruling on that motion, stating that "[i]f Plaintiffs wish to bring . . . this motion for leave to amend to the Eleventh Circuit's attention, they can do so."

## III.

Brady and Perry argue that the district court erred by deferring its ruling on their qualified-immunity defenses until after discovery is completed. [2] We agree.

---

[2] Plaintiffs contend that we lack jurisdiction to review the district court's order because it was not a final, appealable order. However, a panel from this Court preliminary concluded that

6

Qualified immunity is not a last exit before liability. Instead, qualified immunity is a right to be free from litigation altogether once the defense is established. *See Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017) ("[I]mmunity is a right not to be subjected to litigation beyond the point at which immunity is asserted."); *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996). Otherwise, parties could be required to expend significant time, money, and energy only to go 90 miles down the road of a dead-end drive. *See Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) ("Qualified immunity is . . . 'effectively lost if a case is erroneously permitted to go to trial.'") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (collecting cases).

The district court's deferral of its decision violates these principles. And it is not in keeping with our prior precedent in *Howe*. Like in this case, the district court in *Howe* delayed ruling on the officers' qualified immunity and directed them

---

we have jurisdiction. And we see no reason to depart from that conclusion. Rather, it is well-settled that we have jurisdiction to review the district court's order under the "collateral order" doctrine. *See*, *e.g.*, *Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017) (collecting cases and deciding that the district court's order deferring ruling on defendants' immunity defense was reviewable).

7

to commence discovery. *Howe*, 861 F.3d at 1301. We vacated that order and directed the district court to resolve the immunity defense "before requiring that the parties litigate Howe's claims any further." *Id.* at 1303.

Although we understand the district court's decision below, given the flurry of facts from outside the complaint, Brady and Perry are entitled to a ruling sooner rather than later. Consequently, we must vacate the district court's order of November 18, 2016, and remand for the district court to take one of two actions: (1) enter a substantive ruling on Brady's and Perry's pending motion to dismiss or (2) grant Plaintiffs' motion for leave to file a third amended complaint[3] and deny as moot Brady's and Perry's pending motion to dismiss. Should the district court make the latter choice and should Brady and Perry again move to dismiss on qualified-immunity grounds, the district court should resolve those motions before requiring the parties to litigate the claims any further. *See Howe*, 861 F.3d at 1303 n.1 (directing the district court to consider qualified immunity after the plaintiff filed his amended complaint and stating that "responding to Howe's second amended complaint is not a burden of litigation from which the immunity doctrines protect[s]" defendants).

**IV.**

---

[3] We do not opine on how the district court should rule on Plaintiffs' motion for leave to file a third amended complaint. Rather, we note that should the district court decide to grant that motion, Brady's and Perry's pending motion to dismiss would be moot.

For the foregoing reasons, we vacate the district court's order and remand for proceedings consistent with this order.

**VACATED and REMANDED.**