[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12266

Non-Argument Calendar

_____

MICHAEL D. POPE, JR.,

Plaintiff-Appellee,

*versus*

WARDEN ROBINSON,
Individual Capacity,

Defendant,

OFFICER DOZIER,
Individual Capacity,
OFFICER SHOULDERS,
Individual Capacity,

2                    Opinion of the Court                    23-12266

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:20-cv-01399-RDP

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ANDERSON,
Circuit Judges.

PER CURIAM:

Officers Shamarion Dozier and Merrill Shoulders appeal the denial of summary judgment based on qualified immunity from Michael Pope's complaint that the officers failed to protect him from an inmate attack in violation of the Eighth and Fourteenth Amendments. 42 U.S.C. § 1983. The officers argue that Pope, an Alabama prisoner, failed to produce sufficient evidence to establish a constitutional violation and, alternatively, that their alleged conduct did not violate clearly established law. Because we lack appellate jurisdiction over a denial of qualified immunity that turns on issues of evidentiary sufficiency, we dismiss this appeal for lack of jurisdiction.

According to Pope, on the night of June 28, 2020, three inmates at Limestone Correctional Facility stabbed and beat him in a cell while Dozier and Shoulders watched the attack from 10 to 15 feet away. Earlier that day, several inmates broke the sprinklers,

23-12266                Opinion of the Court                3

causing flooding in "D Dorm," which housed maximum-security inmates. About eight to ten inmates were allowed to leave their cells to mop up the water. After Pope asked to help clean, Shoulders let him out of his cell.

Pope further testified that before he could begin mopping, an inmate named Satarus Smith asked Pope if they could talk in Smith's cell, which was about 10 to 15 feet away from a table where Dozier and Shoulders sat. Pope was not afraid to be out of his cell with other inmates, and he and Smith had no problem with each other. Pope watched Smith speak to Dozier before coming back to the cell. After Pope entered Smith's cell, Smith and two other inmates entered behind him. Smith tried to stab Pope with an ice pick, but Pope blocked the strike and tried to escape. After Smith stabbed Pope in the back of his head, he fell to the ground and lost consciousness but woke up moments later to being kicked and stabbed in the back. Pope made it out of the cell and over to Shoulders, who walked Pope back to his cell. Pope did not go to the infirmary that night.

The parties dispute whether Shoulders or Dozier saw the attack. Pope testified that the officers were facing the back door next to Smith's cell, which meant that they had a direct line of sight into the cell. When asked whether the officers were watching only Pope or whether they were watching the other inmates, Pope testified that the officers were "watching everybody" and could see everyone from where they sat. Pope also testified that he did not say anything to Shoulders immediately after the attack because Pope

"was dizzy and confused," and Shoulders had "seen what happened so [Pope] didn't have to tell him anything."

Dozier and Shoulders testified that they released two to three inmates at a time, handcuffed only to the front, to help clean, but they refused Pope's requests to be let out of his cell that night. Dozier denied letting Smith or the other two inmates who allegedly attacked Pope out of their cells. Shoulders recalled seeing one of the alleged attackers—Jaquan Fisher—out of his cell with a mop when Shoulders started his shift. Shoulders could not recall letting Smith out of his cell but denied letting the third alleged attacker out of his cell. Another inmate, Michael Peeks, testified that he saw both Pope and Smith out of their cells that night after hearing them exchange words about the flooding causing damage to Pope's property. Neither officer recalled any incident besides the flooding that night, but Shoulders noticed marks and bruises on Pope's body two or three days later.

About four days after the alleged attack, Pope asked Shoulders to take him to the infirmary and reported that he was suicidal only because he would need to explain his wounds and did not want to be labeled a "rat." Medical records and photographs recorded about 20 "superficial" and "pinpoint" puncture wounds on Pope's body and bruising around his right eye, all of which were beginning to heal. According to Pope's medical expert, the wounds were consistent with an assault and did not appear to be self-inflicted.

Prison officials investigated the cause of Pope's injuries. In a recorded prison call, Smith admitted, "Man, I shot another one. . . . an inmate this time." Smith explained that the inmate he "shot," which in prison jargon could mean stabbed, was "talking crazy behind the doors," and he referenced "pulling the sprinklers" and inmates being let out of their cells. About a week later, one of the wardens sent an email discussing Smith's phone call and stated that based on the investigation, the officers "appear[ed] to have lied during an investigation" and that "Pope was assaulted by another [close] custody inmate."

The officers moved for summary judgment based on qualified immunity. The district court granted the motion in part as to other claims but denied the motion as to the failure-to-protect claim. It ruled that the evidence was sufficient to permit a reasonable jury to find that the officers watched and made no attempt to stop the alleged attack, such as by requesting backup, ordering the alleged attackers to stop, or using pepper spray to stop the attack. It also ruled that, viewing the evidence in the light most favorable to Pope, it was clearly established that the alleged conduct of failing to take reasonable measures to protect Pope from an inmate-on-inmate attack was unconstitutional.

"We review our own jurisdiction *de novo*." *Nelson v. Tompkins*, 89 F.4th 1289, 1295 (11th Cir. 2024). The denial of qualified immunity is an appealable "final decision," 28 U.S.C. § 1291, when it turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Although "a claim of immunity is conceptually distinct

from the merits of the plaintiff's claim, purely factual questions of whether a defendant violated the plaintiff's rights are *not* separable from the merits of his claim." *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020) (citation omitted). And we are barred from reviewing "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.*

The officers argue that the evidence is insufficient to establish a violation of the Eighth Amendment and that the district court erred in ruling that their alleged conduct violated clearly established law. Pope asks us to dismiss this appeal for lack of jurisdiction. We agree with Pope that we lack jurisdiction.

The officers' argument that it was not clearly established that they were required to endanger themselves by "leap[ing] into the fray" to protect Pope challenges the decision by the district court that a jury could find that the officers were able to take reasonable measures to intervene, such as by calling for backup or ordering the attack to cease, and failed to do so. The officers ask us to accept their version of the evidence—a chaotic scene with dangerous inmates loose throughout the dorm that would have made intervening too dangerous—instead of the evidence viewed in the light most favorable to Pope. *See Simmons v. Bradshaw*, 879 F.3d 1157, 1163–64 (11th Cir. 2018) ("If a government official moves for summary judgment asserting entitlement to qualified immunity, then the relevant facts are construed in the light most favorable to the non-movant—*i.e.*, the plaintiff—and the court should decide the issue based on *those* facts." (emphasis added)). Because the

23-12266              Opinion of the Court                    7

officers' argument requires us to accept their version of events, we lack jurisdiction over this interlocutory appeal. *See Hall*, 975 F.3d at 1277–79. The officers' other arguments, including disputing the determination that the record supports Pope's complaint about the officers' subjective awareness of the attack, the duration of the attack, and their ability to intervene, also raise factual issues. It is not for us to decide, at this juncture, whose version of the facts should prevail. A jury will need to decide.

We **DISMISS** this appeal for lack of jurisdiction.